Chad S. Hummel (SBN 139055)
chummel@sidley.com
Eric B. Schwartz (SBN 266554)
eschwartz@sidley.com
Marissa X. Hernandez (SBN 341449)
marissa.hernandez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

*Attorneys for Plaintiff*
*Axia Financial, LLC d/b/a Axia Home Loans*

# UNITED STATE DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AXIA FINANCIAL, LLC d/b/a AXIA HOME LOANS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MASON MCDUFFIE MORTGAGE CO.,<br><br>　　　　　Defendant. | Case No. 3:23-cv-03256<br><br>**COMPLAINT FOR:**<br><br>1. **UNFAIR COMPETITION (CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 ET SEQ.)**<br>2. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>3. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>4. **TORTIOUS INTERFERENCE WITH CONTRACT**<br>5. **VIOLATION OF CALIFORNIA PENAL CODE § 502(C)(1),(2),(3) & (7)**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

COMPLAINT

Plaintiff Axia Financial, LLC d/b/a Axia Home Loans (hereinafter "Axia"), by its attorneys, and for its complaint against Mason McDuffie Mortgage Co. (hereinafter "MasonMac"), alleges as follows:

**NATURE OF THIS ACTION**

1. Axia is a Washington State-based residential mortgage lender founded in 1970. Axia is 100% employee-owned, and has spent considerable time and money in establishing its reputation as one of the leading mortgage companies in the nation. Axia is fully committed to creating sustainable home ownership through responsible lending. In order to accomplish this goal, Axia developed an operations model and organizational structure to better serve its communities. This includes branch offices located in 15 states throughout the continental United States, organized into various areas and regions.

2. MasonMac, in an attempt to benefit from the hard-earned reputation and success of Axia, has engaged in a practice of systematically and illegally raiding Axia for its employee and management talent and, upon information and belief, of stealing Axia's confidential data, including detailed, proprietary customer lists and financial data, from its computer systems in order to unfairly compete in the marketplace. MasonMac unlawfully induced Axia employees to violate their contractual and fiduciary duties and duties of loyalty owed to Axia by urging other Axia employees to encourage their colleagues to leave *en masse* without notice to Axia, and to join MasonMac while stealing Axia's confidential information in violation of California statutory and common law.

3. Specifically, since January 2022, MasonMac systematically, methodically, and purposefully misappropriated talent and information, decimating several of Axia's branches. During this time, MasonMac induced 28 Axia employees to breach their contracts, duties of loyalty, and other obligations. Further, MasonMac has interfered with Axia's relationships with its current and prospective customers, and has misappropriated and used Axia's confidential information.

4. For example, MasonMac very recently conspired with former Axia Area Manager Don Bartolomucci ("Bartolomucci"), former Axia Retail Sales Director Suzanne Hall ("Hall"), and numerous other employees from Axia's various branches, offering them lucrative employment packages with MasonMac in order to persuade other Axia employees to resign *en masse*, and to

defect to MasonMac. Further, MasonMac induced these Axia employees to take confidential business and client information with them, in violation of their employment agreements with Axia. Moreover, Axia is informed and believes that there is evidence that this orchestrated scheme is ongoing, and that additional Axia employees are still being encouraged to violate their obligations to Axia, and to misappropriate Axia's confidential information for the benefit of MasonMac.

5. In order to remedy this misconduct, Axia brings this action against MasonMac, for violating California Business & Professions Code sections 17200 *et seq.*, intentionally and negligently interfering with business expectancy, interfering with contracts, violating California's computer data theft statute (Penal Code section 502(c)), and seeks injunctive and monetary relief.

6. Although Axia's investigation of MasonMac's wrongful conduct is ongoing, on information and belief, MasonMac encouraged and facilitated efforts by prominent Axia employees, including, but not limited to, Bartolomucci, Hall, and the 25 other employees who left Axia to join MasonMac, to abuse their positions of trust, exploit information gained as a result of their status as trusted Axia employees, breach their contracts and fiduciary duties, encourage other Axia employees to do the same, instruct other Axia employees to remove Axia's confidential information, interfere with Axia's customer relationships, violate their duties of loyalty to their employer, and to unfairly compete with Axia.

## PARTIES

7. Plaintiff Axia is a limited liability company organized and existing under the laws of Washington, with its principal place of business at 3009 112th Ave NE, Suite 200, Bellevue, WA 98004. The sole member of Axia's LLC is a corporation, Axia Holdings, which is incorporated in the State of Washington, with a principal place of business in Washington. Thus, Axia and its sole member are citizens of Washington. Axia has branch offices across the United States, including in California.

8. Upon information and belief based on public filings, Defendant MasonMac is a corporation founded in 2005 and organized and existing under the laws of California. It has its

principal place of business at 12647 Alcosta Blvd, Suite 300, San Ramon, CA 94583, and it is a citizen of California.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because (1) Plaintiff's sole member is a citizen of Washington and, upon information and belief based on public filings, Defendant is a citizen of California, and (2) the amount in controversy exceeds $75,000.

10. Venue is proper in the United States District Court for the Northern District of California because Defendant resides in this district. Moreover, a substantial part of the events giving rise to the claim occurred in and emanated from San Ramon, CA, where MasonMac is based. 28 U.S.C. § 1332(b)(1) and (2).

## FACTUAL BACKGROUND

**A.   Axia's Business**

11. Axia is a residential mortgage lender focused on creating sustainable homeownership through responsible lending. Axia uses a relationship-based strategy to originate its loans, and has obtained considerable success throughout the mortgage industry as a result of its operations model and organizational structure, which includes a corporate office located in Bellevue, Washington, and branch offices located in 15 states throughout the continental United States.

12. Axia utilizes branch offices to serve the surrounding communities which primarily contain local teams made up of Loan Originators and operations support staff.

13. The branch offices are overseen by Branch Managers, whose responsibilities include overseeing and building the branch operations, recruiting and overseeing top Loan Originators, and managing loan processors and operational staff.

14. These Branch Managers are, in turn, overseen by Area Managers, whose primary duties include managing sales and operations of assigned branches within a given geographic location. Area Managers are tasked with managing all Branch Managers within that geographic location, assisting with the recruiting, training, and management of new Loan Originators and

other branch staff, and with helping to increase loan volume within the assigned geographic location.

15. Regional Managers oversee staff and recruit Area Managers and Branch Managers within a larger region. Their primary responsibility is to manage operations within that region and to ensure profitability. As such, they oversee all operations within the given region, making sure that Area Managers, Branch Managers, Loan Originators, and all other staff comply with their duties and responsibilities within their respective employment agreements, and operate in accordance with all of Axia's policies and procedures, as well as all applicable laws and regulations.

16. Axia invests substantial money and time in developing its employee base, and each position plays a pivotal role in its success.

17. Axia also invests substantial money and time in developing its business model and operations, and requires its employees to maintain strict confidentiality to protect that information.

**B.   Axia's Employment Contracts**

18. All employees sign employment contracts with Axia restricting the use, copying and taking of confidential customer lists, and prohibit them from working on behalf of competitors.

19. For example, prior to his departure from Axia, Bartolomucci served as Area Manager over several of Axia's branches. As a condition of his employment, Bartolomucci executed an Employment Agreement with Axia which contained an express confidentiality provision, requiring that he maintain the confidentiality of Axia's business information and refrain from unfairly competing with Axia while employed and being paid by it (the "Bartolomucci Employment Agreement").

20. Prior to her departure from Axia, Hall served as V.P. Regional Manager of Axia's Pacific Northwest Region, and later as Retail Sales Director. As a condition of her employment, Hall executed an Employment Agreement with Axia which contained an express confidentiality provision, requiring that she maintain the confidentiality of Axia's business information and refrain from unfairly competing with Axia while employed and being paid by it (the "Hall Employment Agreement").

21. The Bartolomucci Employment Agreement and Hall Employment Agreement contain the same confidentiality provision (collectively, the "Employment Agreements"). Other former Axia employees who are now employed by MasonMac signed similar agreements.

22. As a condition of employment, Axia employees are asked to sign such agreements to ensure that Axia's confidential information will not be used against it, and that its employees do not use such information in order to help Axia's competitors while simultaneously being employed by Axia.

23. Axia also utilizes technology to ensure that its confidential information is protected. Employees receive company laptops which encrypt data and require multi-factor authentication for remote access. Axia maintains security consisting of firewalls and content filtering in order to detect intrusions. Consumer data is also encrypted within Axia's loan origination system. Further, only certain tiers of employees are able to access certain data and information, which is another security measure utilized by Axia. In addition, Axia has implemented numerous policies and procedures which pertain to the handling of both company and consumer data, and holds frequent trainings regarding the protection of such information.

24. Paragraph 3.7 of the Bartolomucci Employment Agreement, and paragraph 3.8 of the Hall Employment Agreements provide:

> <u>Confidential Information</u>. For purposes of this Agreement, "Axia's Confidential Information" means any and all of the following information regardless of whether such information is incorporated in any tangible or intangible record or document: (i) non-public information of customers and potential customers, (ii) information relating to Axia's method of operations, customers, prospective customers, trade name and trade style, marketing, promotional material, finances, business plans or strategy, operating manuals, training materials, policies, and personnel records; and (iii) any other information in the possession of Axia that is not generally known to the public, whether or not specifically denoted by Axia as confidential or proprietary. Employee agrees that he/she will hold Axia's Confidential Information in strict confidence and will not disclose or use any of Axia's Confidential Information during or after Employee's employment with Axia except as specifically authorized by Axia and for Axia's benefit. Employee agrees that any loss to Axia of such

Confidential Information would cause irreparable harm to Axia. (collectively, "Confidential Information")

25. Paragraph 3.10 of the Bartolomucci Employment Agreement, and paragraph 3.11 of the Hall Employment Agreements provide:

> <u>Return of Property</u>.  Employee agrees that upon employment separation, or if requested by Axia during the course of employment, Employee shall turn over to Axia, all documents, files in any format, electronic media, computers and other materials or work product in Employee's possession or control that Employee possesses or that was created pursuant to or derived from Employee's services while employed at Axia.  Employer reserves the right, in its sole discretion, to offset unreturned equipment against any unpaid wages to employee in the amount of the value of the equipment.  In no case is employee ever entitled to the proprietary and Axia Confidential Information on the equipment, if any.

26. Paragraph 3.4 of the Employment Agreements provide:

> <u>Exclusive Employment</u>.  During the term of this Agreement, Employee agrees that he/she shall not perform services for any competitor of Axia or for other person or entity in the mortgage lending and/or real estate industries.  Employee shall not submit or permit or suffer any employee of the Branch to submit, any loan to any other mortgage broker, mortgage banker, wholesaler or financial institution.

27. The provisions from the Employment Agreements listed above are collectively referred to as the "Confidentiality and Loyalty Provisions."  Other former Axia employees who were improperly induced by MasonMac by working with Axia employees in violation of their legal duties, to leave Axia and later join MasonMac, and to take with them confidential information from Axia's computers and computer systems, were also bound by similar Confidentiality and Loyalty Provisions within their employee agreements.

28. On information and belief, MasonMac was or should have been aware that Bartolomucci and Hall—as well as other Axia employees from several of its branches, including Florida, Oregon, Washington, and Minnesota—were bound by the above Confidentiality and Loyalty Provisions in the Employment Agreements.

**C.    For the avoidance of doubt, Axia does not allege any misuse, misappropriation, or other misconduct by MasonMac with respect to trade secrets.  MasonMac Conspires with Axia's Employees to Wrongfully Solicit and Hire *En-Masse* from Several of its Branches**

29.    MasonMac's recruitment of Axia's employees to leave on a coordinated basis, *en masse* from its branches, including Florida, Oregon, Washington, and Minnesota, began in approximately July 2022 when Hall terminated her employment at Axia.  Almost two dozen other Axia employees, primarily from its Washington and Minnesota offices, also departed *en masse* in July and August 2022.  These employees included Loan Originators, Branch Managers, Operations Managers, Loan Processors, and others.  Upon information and belief, this coordinated departure could not have occurred unless Hall and other management employees acted on behalf of MasonMac as its agents and co-conspirators to solicit their colleagues in violation of their contractual duties and fiduciary duties and duties of loyalty.

30.    Also at this time, on information and belief, another high-level Axia employee was acting at MasonMac's direction, as its agent and co-conspirator, to encourage and abet Axia employees to quit and violate the terms of their contracts and their fiduciary duties and duty of loyalty to their employer.  As of today, due in part to the actions of this employee on behalf of MasonMac, three Branch Managers have departed and, on information and belief, three Regional Managers are in constant communication with MasonMac, including several with written offer letters from MasonMac.

**D.    MasonMac Recruits Bartolomucci and Conspires with Him to Export Axia's Confidential Information for MasonMac's Benefit**

31.    Earlier this month, MasonMac recruited Bartolomucci to quit Axia and to violate the terms of his Employment Contract in addition to his fiduciary duty and duty of loyalty to Axia, and join MasonMac.

32.    On May 15, 2023, Ryan Shaffer ("Shaffer"), former Regional Manager at Axia and current E.V.P. of National Production at MasonMac, organized a meeting with Axia employees by sending a Microsoft Teams meeting invitation from his MasonMac email address to Bartolomucci and Rueben Concepcion, the Branch Manager overseeing the Key West area.  Susan Schmidt,

Senior V.P. of Operations at MasonMac, and Jessica Hart, Underwriting Manager at MasonMac, were also invited to attend this meeting.

33. As a former Axia employee, Shaffer is intimately aware that Axia had valid and enforceable contracts with its employees, yet still engaged in efforts to encourage and abet Axia employees to engage in a coordinated solicitation effort on behalf of MasonMac, and to quit and take confidential customer lists from Axia's computers and computer systems in violation of the terms of their duties to Axia.

34. For example, a few weeks following the May 15 meeting, Bartolomucci knowingly breached his fiduciary duties and duties of loyalty owed to Axia by working as an agent of MasonMac to steal Axia's confidential information for MasonMac's benefit. On June 6, 2023, at the direction of MasonMac, Bartolomucci emailed an Axia customer list with hundreds of customers' confidential information, including contact information and highly sensitive financial information, to his personal email address from his Axia work computer. Bartolomucci attempted to cover his tracks by deleting the email and then deleting his Trash folder; however, Axia successfully recovered this email. Bartolomucci's cover-up effort is evidence that he knew that his taking of confidential information was done without authorization by Axia, and violated his contract and other legal duties.

35. On June 15, 2023, Axia terminated Bartolomucci following his blatant breach of duty of loyalty to Axia and breach of fiduciary duty by stealing Axia's confidential information.

36. MasonMac knew that the Axia employees all worked at Axia and owed them contractual and legal duties during MasonMac's wrongful recruitment efforts. MasonMac also knew its recruiting tactics described herein were wrongful, and violated Axia's contracts, policies and the duties owed to Axia by its employees. Indeed, it would violate MasonMac's own policies and employment agreements if one of its employees engaged in similar recruiting tactics.

### FIRST CAUSE OF ACTION

**Unfair Competition (California Business and Professions Code §§ 17200 *et seq.*)**

37. Axia hereby alleges and incorporates by reference each and every allegation in all preceding and subsequent paragraphs as if fully set forth herein.

38. MasonMac's acts alleged herein, including but not limited to its conspiracy with Axia's employees to breach their contracts, violate their fiduciary duties and duty of loyalty, take Axia's confidential information, and defraud Axia constitute unfair, unlawful, and/or fraudulent business acts and practices under California Business and Professions Code section 17200, because such acts are forbidden by various state and federal laws, unscrupulous, unlawful, unfair, and injurious to Axia.

39. MasonMac's actions were unlawful, because they violated California Penal Code § 502(c), and induced Axia's employees to breach their statutory fiduciary duties and duties of loyalty to Axia.

40. MasonMac's actions were unfair because they offend public policy and the law, and were immoral, unethical, oppressive, unscrupulous, and injurious to consumers, as alleged in detail throughout this Complaint.

41. Axia is informed and believes, and on that basis alleges, that MasonMac was aware of the wrongful nature of its acts.

42. As a direct, proximate, and foreseeable result of MasonMac's wrongful conduct alleged herein, Axia has suffered irreparable injuries, including but not limited to wrongful loss of customers to MasonMac based on their unfair and illegal actions and use of Axia's confidential information, for which Axia's remedy at law is inadequate. The public interest would be served by granting the relief sought because it clearly favors preventing institutions such as MasonMac from engaging in and profiting from unfair business practices as described herein.

43. Axia is also entitled to restitution and disgorgement of MasonMac's ill-gotten gains relating to its unfair competition. These remedies are cumulative of one another and of other remedies under California law.

## SECOND CAUSE OF ACTION

**Intentional Interference with Prospective Economic Advantage**

44. Axia hereby alleges and incorporates by reference each and every allegation in all preceding and subsequent paragraphs as if fully set forth herein.

45. Axia had existing and prospective economic relationships with each of its existing

and prospective borrowers.  Each of those relationships benefitted Axia economically and likely would have continued to benefit Axia economically in the future, as Axia, like most mortgage companies, makes money by servicing the same borrowers repeatedly by financing additional loans, re-financing old loans, and servicing loans.

46. MasonMac was aware of Axia's economic relationships with its existing and prospective borrowers, including specifically by virtue of the client information they induced Bartolomucci and other members of Axia's Florida, Oregon, Washington or Minnesota branches to improperly supply to them, and generally by virtue of their understanding of the mortgage lending business and how it operates with respect to client relationships.  Axia is informed and believes that MasonMac intended to disrupt, and succeeded in disrupting, Axia's business operations and relationships with its current and prospective borrowers by engaging in the conduct set forth in the preceding and subsequent paragraphs, including without limitation by (a) directly or indirectly soliciting Axia's borrowers to MasonMac with the help of Axia's employees and confidential information; (b) actively diverting Axia's borrowers to MasonMac with the help of Axia's employees and confidential information; and (c) misusing Axia's computer systems and networks without permission or authorization to access and misappropriate Axia's and its borrowers' confidential and proprietary information.  MasonMac was or should have been aware that Bartolomucci and Hall—as well as other Axia employees from several of its branches, including Florida, Oregon, Washington, and Minnesota—were bound by the above Confidentiality and Loyalty Provisions in the Employment Agreements.  Moreover, Axia has incontrovertible evidence that Bartolomucci knowingly breached his fiduciary duties and duties of loyalty owed to Axia by emailing confidential customer information from Axia's computer systems to his personal email address before Axia terminated his employment on June 15, 2023.  Most, if not all, of the foregoing actions were wrongful for the further reason that MasonMac induced Axia's employees to breach their fiduciary duties and duties of loyalty to Axia.

47. As a result of all MasonMac's numerous acts of misconduct, Axia has suffered and continues to suffer economic loss and other general and specific damages, including but not limited to damage to business reputation, lost profits, lost revenue, loss of its competitive position,

loss of market share, lost business opportunities, and loss of workforce, all in an amount to be determined according to proof at the time of trial.  Axia has also been irreparably harmed, entitling it to injunctive relief.

48. MasonMac committed the wrongful acts alleged herein maliciously, oppressively, and with intent to defraud and permanently deprive Axia of its property, economic benefits, and employees.  Axia is entitled to punitive and exemplary damages in an amount to be ascertained according to proof at the time of trial, which is appropriate to punish and set an example.

## THIRD CAUSE OF ACTION

### Negligent Interference with Prospective Economic Advantage

49. Axia hereby alleges and incorporates by reference each and every allegation in all preceding and subsequent paragraphs as if fully set forth herein.

50. Axia had existing and prospective economic relationships with each of its existing and prospective borrowers.  Each of those relationships benefitted Axia economically and likely would have continued to benefit Axia economically in the future, as Axia, like most mortgage companies, makes money by servicing the same borrowers repeatedly by financing additional loans, re-financing old loans, and servicing loans.

51. MasonMac owed a duty of care to Axia because its recruitment and onboarding of several members from Axia's Florida, Oregon, Washington or Minnesota branches could not be performed without a direct effect on Axia's business, the adverse effect on Axia's business was clearly foreseeable, Axia's business suffered injury from MasonMac's actions, MasonMac's actions were closely connected with and caused Axia's business injury, MasonMac's actions were blameworthy because it acted after the probability of damage was known or should have been known, and public policy supports a duty of care.

52. MasonMac was or should have been aware of Axia's economic relationships with its existing and prospective borrowers, including specifically by virtue of the client information they induced Bartolomucci and other members of Axia's Florida, Oregon, Washington, or Minnesota branches to improperly supply to them, and generally by virtue of their understanding of the mortgage lending business and how it operates with respect to client relationships.

53. Axia is informed and believes that MasonMac wrongfully disrupted Axia's business operations and relationships with its current and prospective borrowers by engaging in the conduct set forth in the preceding and subsequent paragraphs, including without limitation by (a) directly or indirectly soliciting Axia's borrowers to MasonMac with the help of Axia's employees and confidential information; (b) actively diverting Axia's borrowers to MasonMac with the help of Axia's employees and confidential information; and (c) misusing Axia's computer systems and networks without permission or authorization to access and misappropriate Axia's and its borrowers' confidential and proprietary information.  MasonMac was or should have been aware that Bartolomucci and Hall—as well as other Axia employees from several of its branches, including Florida, Oregon, Washington, and Minnesota—were bound by the above Confidentiality and Loyalty Provisions in the Employment Agreements.  Moreover, Axia has incontrovertible evidence that Bartolomucci knowingly breached his fiduciary duties and duties of loyalty owed to Axia by emailing confidential customer information from Axia's computer systems to his personal email address before Axia terminated his employment on June 15th, 2023.  Most, if not all, of the foregoing actions were wrongful for the further reason that MasonMac induced Axia's employees to breach their fiduciary duties and duties of loyalty to Axia.

54. As a result of all MasonMac's numerous acts of misconduct, Axia has suffered and continues to suffer economic loss and other general and specific damages, including but not limited to damage to business reputation, lost profits, lost revenue, loss of its competitive position, loss of market share, lost business opportunities, and loss of workforce, all in an amount to be determined according to proof at the time of trial.  Axia has also been irreparably harmed, entitling it to injunctive relief.

55. MasonMac committed the wrongful acts alleged herein maliciously, oppressively, and with intent to defraud and permanently deprive Axia of its property, economic benefits, and employees.  Axia is entitled to punitive and exemplary damages in an amount to be ascertained according to proof at the time of trial, which is appropriate to punish and set an example.

## FOURTH CAUSE OF ACTION

### Tortious Interference with Contract

56. Axia hereby alleges and incorporates by reference each and every allegation in all preceding and subsequent paragraphs as if fully set forth herein.

57. Axia had valid and enforceable Employment Agreements with all former Axia employees referenced herein.

58. Specifically, Axia was party to the Loyalty and Confidentiality Provisions in the Employment Agreements.

59. At all times, MasonMac was aware that Axia had valid and enforceable contracts with its employees, including because former Axia employees engaged in solicitation efforts on behalf of MasonMac. At a minimum, MasonMac was on notice that it is standard within the mortgage industry for employees to be subject to Confidentiality and Loyalty Provisions.

60. MasonMac intentionally induced Bartolomucci and the other former Axia employees to breach the Confidentiality and Loyalty Provisions of their Employment Agreements by, among other things, inducing him to transfer Axia's confidential information to MasonMac, to divert Axia's clients to MasonMac, and to act as an agent of MasonMac during his ongoing employment with Axia. MasonMac also induced Axia employees to work as agents of MasonMac, while still employed by Axia, to induce other members of Axia's Florida, Oregon, Washington or Minnesota branches to resign and undertake employment with MasonMac.

61. MasonMac's interference with Axia's Employment Agreements caused the breach thereof and resulted in damage to Axia by appropriating the confidential information, employee training, and client relationships into which Axia had invested substantial time and expense for MasonMac's monetary gain.

62. MasonMac's intentional and wrongful conduct has caused immediate, substantial, and ongoing injury to Axia, including substantial economic harm in the form of damage to its relationships with its valued customers and employees, the loss of its competitive position, loss of market share, loss of employees, and lost profits. Axia has also been irreparably harmed, entitling it to injunctive relief.

63. MasonMac committed the wrongful acts alleged herein maliciously, oppressively, and with intent to defraud and permanently deprive Axia of its property, economic benefits, and employees. Axia is entitled to punitive and exemplary damages in an amount to be ascertained according to proof at the time of trial, which is appropriate to punish and set an example.

## FIFTH CAUSE OF ACTION

### Violation of CA Penal Code § 502

64. Axia hereby alleges and incorporates by reference each and every allegation in all preceding and subsequent paragraphs as if fully set forth herein.

65. On a repeated and systematic basis, Bartolomucci and, upon information and belief, other employees from Axia's Florida, Oregon, Washington or Minnesota branches, acting as MasonMac's agents, either individually or in conspiracy with one another, have knowingly and without permission accessed Axia's computer, computer system, or computer network in violation of their agreements with Axia and in violation of California Penal Code § 502(c)(7), as alleged in detail above.

66. Furthermore, the same individuals and MasonMac, either individually or in conspiracy with one another, have knowingly accessed and made use of data from Axia's computer, computer system, or computer network in order to wrongfully control or obtain money, property, or data, in violation of California Penal Code § 502(c)(1), as alleged in detail above.

67. Furthermore, the same individuals and MasonMac, either individually or in conspiracy with one-another, knowingly accessed and without permission took, copied, or made use of data from Axia's computer, computer system, or computer network in violation of California Penal Code § 502(c)(2), as alleged in detail above.

68. Furthermore, the same individuals and MasonMac, either individually or in conspiracy with one another, have knowingly used, or caused to be used, Axia's computer services without permission, in violation of California Penal Code § 502(c)(3), as alleged in detail above.

69. As alleged in more detail herein, these violations have damaged Axia by, among other things, diverting Axia's confidential borrower information to MasonMac, which MasonMac

used to unfairly compete with Axia, interfere with its business relationships, compete, close loans, and to take Axia's employees *en masse* from Axia's Florida, Oregon, Washington or Minnesota branches.

70. Pursuant to California Penal Code § 502(e), Axia is entitled to compensatory and punitive damages, attorneys' fees, injunctive relief, and other legal and equitable relief as prayed for herein.

71. MasonMac has acted with oppression, fraud, and malice toward Axia, entitling Axia to an award of punitive damages in an amount sufficient to deter them from future misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Axia respectfully prays for judgment as follows:

1. For preliminary and/or permanent injunctive relief, including but not limited to:

    (a) Requiring MasonMac to preserve all confidential, proprietary, or protected Axia information in its possession and any documents or communications related to the allegations set forth herein;

    (b) Restraining and enjoining MasonMac, its agents, servants, and employees, and all other persons acting in concert or participating with it from disclosing or utilizing any confidential, proprietary, or protected information obtained from Axia including, but not limited to, the identity and other information of Axia's customers;

    (c) Requiring MasonMac, Bartolomucci and other former Axia employees to return any confidential, proprietary, or protected information or other property or information of Axia wrongfully taken from Axia; and/or;

    (d) Restraining and enjoining MasonMac, its agents, servants, and employees, and all other persons acting in concert or participating with it from inducing Axia employees to breach their contractual and fiduciary duties and duties of loyalty to Axia.

2. For compensatory and general damages according to proof;

3. For special damages according to proof;

4. For consequential damages according to proof;

5. For restitution and disgorgement according to proof;

6. For punitive and exemplary damages according to proof;

7. For prejudgment interest at the maximum legal rate;

8. For costs of the proceedings herein;

9. For attorneys' fees as provided by statute; and

10. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Axia hereby demands a jury trial for all issues so triable.

DATED: June 29, 2023                SIDLEY AUSTIN LLP

By: */s/ Eric B. Schwartz*
Chad S. Hummel
Eric B. Schwartz
Marissa X. Hernandez

*Attorneys for Plaintiff*
*Axia Financial, LLC d/b/a Axia Home Loans*