UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIA FINANCIAL, LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>MASON MCDUFFIE MORTGAGE CO.,<br><br>                Defendant. | Case No.  23-cv-03256-TLT<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER SHOWING CAUSE**<br><br>Re: ECF No. 39 |

## I.    INTRODUCTION

Before the Court is plaintiff Axia Financial, LLC d/b/a Axia Home Loan's ("Plaintiff" or "Axia") application for a temporary restraining order and an order to show cause seeking to enjoin defendant Mason McDuffie Mortgage Co. ("Defendant" or "MasonMac") from destroying or using Plaintiff's confidential customer information obtained from its customer accounts.  *Ex Parte* Appl., Mot. for TRO, Req. OSC ("TRO Mot."), ECF No. 39.  Plaintiff also seeks an order to compel Defendant to return all proprietary data or information, as follows:

> (1)    enjoining and restraining MasonMac, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of MasonMac, pending the preliminary injunction hearing or further Order of this Court, from taking, copying, using, disclosing, or transmitting for any purpose, Axia's confidential customer information, and the names, addresses, telephone numbers, account numbers, and other information related to the Axia customers and the accounts in Axia's records; and

> (2)    compelling MasonMac, and all those acting in concert with MasonMac who receive notice of this Order, including any officer, agent, employee, or representative, to return to Axia no later than seven (7) days after this Order is entered, any and all information, materials, documents, files, or data, in whatever form, and any copies (including electronic files stored on any portable electronic medium, including, but not

United States District Court
Northern District of California

limited to, thumb drives, portable hard drives, DVDs, CDs, or any other electronic storage device) thereof, containing, reflecting, or referring to any of Axia's confidential or proprietary data or information, including without limitation customer information.

TRO Mot. 3.

Having considered the parties' briefs and the relevant legal authority, and for the reasons below, the Court **GRANTS** Plaintiff's *ex parte* motion for a temporary restraining order commencing September 19, 2023 through the hearing regarding same on **October 3, 2023, 10:00 a.m., in-person,** at which time the Court will reassess its order.[1] The Court **ORDERS** Defendant to show cause as to why a preliminary injunction should not be entered at the hearing set for **November 7, 2023, at 2:00 p.m., in-person**.

## II.    BACKGROUND

### A.    Procedural Background

Plaintiff filed a complaint with this Court on June 29, 2023, bringing five causes of action against Defendant for violations under (1) California Penal Code section 502, (2) California Unfair Competition Law, (3) intentional interference with prospective economic advantage, (4) negligent interference with prospective economic advantage, and (5) tortious interference with contract. Complaint ("Compl."), ECF No. 1.  In response, Defendant filed a motion to dismiss on August 4, 2023, and the Court set a hearing for November 7, 2023.  Def.'s Mot. to Dismiss, ECF No. 17; *see also* ECF No. 19.  Afterward, Plaintiff filed a motion for preliminary injunction and the hearing was set on the same day.  Mot. Prelim. Inj., ECF No. 20.

The matter was referred to Magistrate Judge Sallie Kim for discovery purposes on August 14, 2023, who granted in part Plaintiff's application for leave to take limited expedited discovery and ordered Defendant to produce any documents taken from Plaintiff's business.  Disc. Order, ECF No. 31.  In compliance with the discovery order, Defendant produced "over 73,000 pages of Axia's highly sensitive and confidential customer information, which had been taken from Axia and uploaded to MasonMac."  Declaration of Eric B. Schwartz ¶ 8 ("Schwartz Decl."), ECF No. 39-1.  The parties filed an stipulation and proposed protective order on September 11, 2023.  ECF

---

[1] Hearing information can be found in Judge Thompson's Civil Standing Order at paragraph ¶ 4.

United States District Court
Northern District of California

No. 37.  On September 14, 2023, Plaintiff requested that Defendant collect and stop using any confidential information obtained in 2022.  TRO Mot. 2.  To no avail of Defendant, Plaintiff filed the instant request, seeking immediate emergency relief from the Court.  *Id.*

### B.    Factual Background

Plaintiff is an employee-owned residential mortgage lender located in Bellevue, Washington.  Compl. ⁋ 1.  Defendant is a mortgage lender located in San Ramon, California.  *Id.* at ⁋ 8.  The parties are competitors in the mortgage lender industry.  *Id.*  Plaintiff alleges Defendant engaged in "the systemic practice of illegally raiding" Plaintiff's company by recruiting 40 of its employees who were restricted under contract from taking confidential and proprietary information from Axia to any other competitor.  TRO Mot. 3-4 (*citing* Decl. of Kevin Hoyt in Supp. of Axia's Mot. for Prelim. Inj. ("Hoyt Decl.")).  Plaintiff required all employees to sign employment agreements that "restrict[ed] the use, copying, and taking of confidential customer lists, and prohibiting them from working on behalf of competitors."  Compl. ⁋ 18.  Plaintiff provides an example the employee agreement as follows:

> Confidential Information. For purposes of this Agreement, "Axia's Confidential Information" means any and all of the following information regardless of whether such information is incorporated in any tangible or intangible record or document: (i) non-public information of customers and potential customers, (ii) information relating to Axia's method of operations, customers, prospective customers, trade name and trade style, marketing, promotional material, finances, business plans or strategy, operating manuals, training materials, policies, and personnel records; and (iii) any other information in the possession of Axia that is not generally known to the public, whether or not specifically denoted by Axia as confidential or proprietary. Employee agrees that he/she will hold Axia's Confidential Information in strict confidence and will not disclose or use any of Axia's Confidential Information during or after Employee's employment with Axia except as specifically authorize by Axia and for Axia's benefit. Employee agrees that any loss to Axia of such Confidential Information would cause irreparable harm to Axia.

> Return of Property. Employee agrees that upon employment separation, or if requested by Axia during the course of employment, Employee shall turn over to Axia, all documents, files in any format, electronic media, computers and other materials or work product in Employee's possession or control that Employee possesses or that was created pursuant to or derived from Employee's services while employed at Axia. Employer reserves the right, in its sole discretion, to offset unreturned equipment against any unpaid wages to employee

3

in the amount of the value of the equipment. In no case is employee ever entitled to the proprietary and Axia Confidential Information on the equipment, if any.

<u>Exclusive Employment.</u> During the term of this Agreement, Employee agrees that he/she shall not perform services for any competitor of Axia or for other person or entity in the mortgage lending and/or real estate industries. Employee shall not submit or permit or suffer any employee of the Branch to submit, any loan to any other mortgage broker, mortgage banker, wholesaler or financial institution.

TRO Mot. 3-4.  Plaintiff alleges that Defendant unlawfully acquired this confidential data from Plaintiff's computers and computer systems to benefit Defendant and to obtain a competitive advantage over Plaintiff.  *Id.*  After Defendant complied with the discovery order, Plaintiff discovered that Defendant—through 13 former Axia employees—unlawfully acquired 15,544 documents spanning 73,115 pages.  TRO Mot. 2.  These produced documents contained a large number of highly sensitive customer information which breaks down into three categories:

(1) Detailed Customer Lists: Voluminous, detailed information about customers, including names, phone numbers, addresses, emails, dates of birth, FICO scores, loan amounts, title/escrow information, etc.;

(2) Confidential Customer Data / Financial Forms: Detailed loan applications called 1003s, bank statements, credit reports, tax returns, Form SSA-1099 Social Security Benefit statements, paystubs, credit card statements, various forms containing borrowers' social security numbers and FICO scores, etc.;

(3) Other Proprietary Axia Forms and Documents: Income calculation worksheets, Axia operations emails, and other proprietary Axia worksheets and templates.

Schwartz Decl. ₱ 12 (formatting cleaned up).

In addition, Plaintiff adds that Defendant should have known about these agreements because they are standard in the industry.  TRO Mot. 4.  Additionally, Plaintiff asserts that Defendant likely directed former Axia employees to "**destroy**" the confidential information taken after Axia discovered Defendant's conduct.  Schwartz Decl. ¶ 6 (emphasis added).  The information obtained by Defendant is critical to Axia's business.  TRO Mot. 4.  As a result, Plaintiff placed technological protective measures in place to prevent a breach of sensitive information.  *Id.*; Declaration of Robert Petty II ¶ 2 ("Petty Decl."), ECF No. 20-4.  Axia provides all its employees with work laptops that "encrypt data and require multi-factor authentication" to

United States District Court
Northern District of California

1  obtain remote access.  TRO Mot. 5; Petty Decl. ¶ 2.  Axia's confidential information is stored

2  behind firewalls.  Petty Decl. ¶ 2.  Plaintiff structured its computer network to limit the access

3  employees have to confidential information.  *Id.*  Plaintiff reinforces its information security

4  through policies and procedures for employees on handling confidential data.  TRO Mot. 5; Petty

5  Decl. ¶¶ 4-6.  By design, Plaintiff's system allowed it to see who sent information, where it was

6  sent, and when the information was transmitted.  TRO Mot. 6.

7       Such was the case for former Axia employee Don Bartolomucci.  TRO Mot. 5-6.  On May

8  15, 2023, Ryan Shaffer, a former Regional Manager at Axia and an employee of Defendant at the

9  time, sent an invitation to a videocall to two Axia employees, including Bartolomucci.  The call

10  was titled "CONFIDENTIAL: MasonMac Ops Call – Don Bartolomucci & Rueben Conception."

11  Petty Decl. ¶ 11; TRO Mot. 5-6.  Plaintiff asserts that the purpose of the meeting was for Shaffer

12  to recruit Bartolomucci to work at MasonMac.  TRO Mot. 5-6.  A few weeks after this meeting,

13  Axia's digital records indicate Bartolomucci, from his work computer, sent an email to his

14  personal email account containing sensitive information for hundreds of Axia's customers,

15  including contact information and highly sensitive financial information.  TRO Mot. 6.

16  Afterward, Bartolomucci took steps to "cover his tracks" by deleting the email and the copy in his

17  trash folder.  TRO Mot. 6.  In context, two dozen or so employees resigned between July and

18  August of 2022 across all branch locations—which raised concerns leading to a closer look into

19  recent departures.  TRO Mot. 5; Hoyt Decl. ¶ 18.  This prompted Plaintiff to file its complaint on

20  June 29, 2023.  TRO Mot. 6; Compl., ¶¶ 37-71.

21       After confirming the wrongful taking of confidential customer information, Plaintiff

22  requested that Defendant stop using this confidential information to no avail.  *Id.* at 9; Schwartz

23  Decl. ¶¶ 6, 7, 9.  Instead, Plaintiff alleges that Defendant destroyed evidence and attempted to

24  evade liability by claiming that none of Plaintiff's information was in Defendant's possession.  *Id.*

25  at 9; Schwartz Decl. ¶ 6 in Supp. of Mot. for Prelim. Inj., ECF No. 20-7.  After Defendant

26  complied with the discovery order, Axia leadership discovered that Defendant unlawfully acquired

27  over 15,000 confidential documents.  TRO Mot. 10.  Defendant also sent an email confirming that

28  documents taken by custodian Karrie Vogt needed to be sequestered.  Schwartz Decl. ¶ 13, Ex. I.

However, the sequestration never occurred.  TRO Mot. 8.

Plaintiff details 11 meet and confer efforts with Defendant regarding the misappropriated confidential information.  *See* TRO Mot. 9-10.  The Court does not reiterate the efforts in full, but provides a sample of Defendant's denials and then ultimate concession.

> June 12, 2023: Letter from MasonMac to Axia, asserting that "we have found no indication that MMMC has engaged in the referenced illegal conduct . . . . **MMMC is not engaged in any effort to cause Axia employees to divulge Axia's proprietary or confidential information** . . . . MMMC is unaware of any former Axia employee using Axia's proprietary or confidential information in the course of their work for MMMC." (Schwartz Decl., ¶ 7 & Ex. C) (emphasis added).

> July 14, 2023: Meet and confer letter from MasonMac falsely stating that "**[a]s for loan processing data, our understanding is that no data from Axia's loan processing system has been uploaded to MasonMac's loan processing system or otherwise transferred to MasonMac's possession.**" (*Id*., ¶ 9 & Ex. F) (emphasis added).

> August 3, 2023: Meet and confer letter from MasonMac falsely stating that, "[a]s we stated in our July 14, 2023 letter, and reiterated in our July 19, 2023 call, we are unaware of any trade secret or proprietary information being uploaded into MasonMac's CRM . . . **We are aware of no other similar situation involving any other former Axia employee, including with respect to Ms. Hall. Nor did MasonMac ever seek access to any Axia database or Axia customer list.**" (*Id*., ¶ 10 & Ex. G) (emphasis added).

> September 15, 2023: Email from MasonMac agreeing that approximately 15,000 of Axia's documents, which had been taken by custodian Karrie Vogt and uploaded to MasonMac's systems, needed to be sequestered, as they contained highly confidential information, including, but not limited to, customers' financial documents. This is a tacit admission of MasonMac's wrongdoing and evidences an obligation on its part to correct the issue. (*Id*., ¶ 13 & Ex. I).

## III.    LEGAL STANDARD

### A.    Temporary Restraining Orders

Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction.  *See New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1347 n.2 (1977); *see also Stuhlbarg lnt'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839 n. 7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary and drastic remedy, that is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted).  Rule 65 requires a court granting an injunction or a restraining order

United States District Court
Northern District of California

to state why it is being issued, state the specific terms, and describe in reasonable detail the act or acts restrained. Fed. R. Civ. P. 65(b)(2). In addition, a TRO issued without notice must state the date and hour it was issued, describe the injury and state why it is irreparable, state why the order was issued without notice, and be promptly filed. *Id*. Moreover, if the TRO is issued without notice, the motion for preliminary injunction "must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character." Fed. R. Civ. P. 65(b)(3).

Whether seeking a temporary restraining order or a preliminary injunction, a plaintiff must establish four factors: (1) that she is likely to succeed on the merits; (2) that she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council. Inc.,* 555 U.S. 7, 20 (2008). Irreparable harm must be likely—it is no longer sufficient to grant a preliminary injunction upon a mere showing of a "possibility" of irreparable harm when the other factors weigh heavily in favor of the plaintiff. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir.2011). The court in any situation must find that there is at least a fair chance of success on the merits, *see Johnson v. Calif. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995), and that there is some threat of an immediate irreparable injury. *See Big County Foods, Inc. v. Bd. of Ed. of the Anchorage School Dist.,* 868 F.2d 1085, 1088 (9th Cir. 1989).

## B.     *Ex Parte* Injunctive Relief

*Ex parte* injunctive relief is to be granted sparingly. *Kinney v. Lavin*, Case No. 14-3817, 2014 WL 4182478, at *1 (N.D. Cal. Aug. 22, 2014). "The stringent restrictions imposed . . . by Rule 65, on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438-39 (1974). Accordingly, courts have generally confined *ex parte* injunctive relief to two situations. *See Reno Air Racing Ass'n, Inc. v. McCord,* 452 F.3d 1126, 1131 (9th Cir. 2006). First, a plaintiff may obtain *ex parte* relief where notice to

the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing. *Id.* Second, courts have recognized a "very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Id.* (citation and internal quotation marks omitted).

## IV.   DISCUSSION

### A.   Plaintiff is Likely to Suffer Irreparable Harm.

Plaintiff alleges Axia is likely to suffer immediate and irreparable harm absent the Court's relief for three reasons. First, Defendant is in possession of illegally obtained confidential and proprietary information derived from Plaintiff's business. TRO Mot. 17; Schwartz Decl. ¶¶ 5, 8, 10-12. In addition, Defendant indicates a clear intention to use the unlawfully obtained information for its benefit as a competitor. *Id.* Second, when Defendant recruited current employees from Plaintiff, the nature of their departures disrupted the business and good will associated with those work centers. *Id.* Finally, Defendant's denial to quarantine, cease usage, and return the unlawfully obtained information necessitates the Court's intervention. *Id.*

"An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) (*citing Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987)). Generally, economic injury is not irreparable because monetary damages are an adequate remedy. *Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Nevertheless, "intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Id.*; *see also Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841. While a "loss of control over business reputation and damage to goodwill could constitute irreparable harm," courts determining that such harm exists cannot be "grounded in platitudes rather than evidence." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). Instead, a plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Winter*, 555 U.S. at 21.

**1.    Plaintiff's Stolen Trade Secrets Establish Irreparable Harm.**

Plaintiff contends that there is a likelihood of irreparable injury if Defendant exploits, discloses, or uses the illegally obtained "highly sensitive customer information" as a competitor in the mortgage lending industry.  Schwartz Decl. ¶¶ 5, 8, 10-12.  This confidential and proprietary information includes "[financial statements], tax returns, bank statements, and various Axia forms . . . and customers lists."  TRO Mot.  17, Exs. E, H -J; Schwartz Decl. ¶¶ 5, 8, 10-12.  Plaintiff explains that when former employees and current agents of Defendant—namely Don Bartolomucci—attempted to conceal the nature of how he stole the information at dispute, this indicated Defendant's intent to use the information for competitive benefit.  Petty Decl. ¶ 12.  If taken as true, the Court tends to agree.

Under the Uniform Trade Secrets Act ("UTSA"), California defines a trade secret as information, among other things, that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use."[2]  *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir.1993) (*citing* Cal. Civ. Code § 3426.1(d)).  In addition, taking or using confidential and/or proprietary information for the benefit of a competitor constitutes irreparable harm.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (explaining that evidence indicating a "threatened loss of prospective customers or goodwill . . . supports a finding of the possibility of irreparable harm.").

Here, confidential customer information—financial and bank statements, credit reports, tax returns, social security benefit statements, paystubs, credit card statements—and Axia's proprietary forms constitute trade secrets.  *See MAI Sys. Corp*, 991 F.2d at 521 (*citing* Cal. Civ. Code § 3426.1(d)).  The taking of this confidential information poses a threat to Plaintiff to lose prospective and current customers.  Furthermore, Plaintiff's former employees' departures en masse has interfered with its business centers across the country.  Accordingly, Plaintiff has

---

[2] The UTSA definition of "misappropriation" has been clarified by case law which establishes that the right to announce a new affiliation, even to trade secret clients of a former employer, is basic to an individual's right to engage in fair competition, and that the common law right to compete fairly and the right to announce a new business affiliation have survived the enactment of the UTSA.  *See American Credit Indem. Co. v. Sacks*, 262 Cal. Rptr. 92, 99–100 (Cal. Ct. App. 1989).

United States District Court
Northern District of California

established a sufficient showing of immediate or irreparable harm resulting from Defendant's possession of confidential and proprietary information.

### B.    The Balance of Equities Tips in Plaintiff's Favor.

Plaintiff further alleges that greater injury will be inflicted upon Axia by the denial of temporary injunctive relief than would be inflicted upon MasonMac by the granting of such relief. TRO Mot. 18.  For instance, Plaintiff claims Axia's "good will, established business reputation, proven methods of business operation, and contractual rights" outweighs any detriment to Defendant.  *Id.*  Conversely, Plaintiff contends that Defendant and its employees will not suffer hardship for two reasons.  *Id.*  First, Defendant gains employees with valuable client management skills and general industry knowledge obtained while employed at Axia.  *Id.*  Second, California law does not allow former employees to abuse their fiduciary relationships by using their former employer's confidential information to Plaintiff's detriment.  *Id.*  The Court concurs—the balance of equities also tips in Plaintiff's favor.

When analyzing this element, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24; *see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993).  In assessing whether a plaintiff establishes a balance of equities that tips in their favor, "the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (alteration in original) (citation omitted).

Here, an injunction will prevent Defendant from using any misappropriated information while also minimizing the competitive harm suffered by Plaintiff.  In preventing Defendant from using Plaintiff's confidential and proprietary information, a narrowly tailored injunction will prevent Defendant from engaging in unlawful behavior, which has not been disputed at this point. *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) ("When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction.").  At this juncture in the proceedings, risk of competitive harm to Axia from MasonMac's use of its customer lists and accompanying

1   confidential data outweighs the only harm the Court can identify for Defendant: the publicization

2   of the injunction to harm Defendant's market standing.  Accordingly, the balance of equities tips

3   in Plaintiff's favor.

### C.    The Public Interest Weighs in Favor of Plaintiff.

4       Plaintiff alleges an injunction would serve the public interest by "protecting highly

5   sensitive and confidential customer lists, tax forms, bank statements, 1003s, social security

6   numbers, and other confidential data entrusted to Axia and stored on its computers and computer

7   systems." TRO Mot. 18-19.  Plaintiff also contends an injunction will advance public interest

8   because preserving its confidential information fosters an environment of fair competition within

9   the industry.  *Id.* at 19.  Upon deeper analysis, this factor tips in favor of Axia and its customers.

10      "In exercising their sound discretion, courts of equity should pay particular regard for the

11  public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at

12  24 (*quoting Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  This issue rests at the

13  intersection of competing weighty interests.  As the confidential information at dispute constitutes

14  trade secrets taken from former employers to a competitor, California law guides the Court on

15  public policy concerning both matters.

16      From one lens, California law contains a "settled legislative policy in favor of open

17  competition and employee mobility," defending "the important legal right of persons to engage in

18  businesses and occupations of their choosing." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937,

19  946, (2008).  Alternatively, another public policy lens insightfully suggests that California

20  strongly favors protecting trade secrets—here that interest is piqued because consumers' private

21  and confidential information is involved.  *See Retirement Group v. Galante*, 176 Cal. App. 4th

22  1226, 1237 (2009) ("An equally lengthy line of cases has consistently held former employees may

23  not misappropriate the former employer's trade secrets to unfairly compete with the former

24  employer").

25      In *Morlife, Inc. v. Perry*, the California Court of Appeal acknowledged the importance of

26  these two public policy concerns.  *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997).  It

27  explained the "important legal right of persons to engage in businesses and occupations of their

United States District Court
Northern District of California

choosing." *Id.*  Yet consumers who invest in the success of a business should be protected from "the gratuitous use of that 'sweat-of-the-brow' by others." *Id.*  Ultimately, the court determined that granting injunctive relief when a business' trade secrets are obtained and used by a former employee's conversion from one employer to another is proper.  *Id.* at 1528 (explaining its decision "conform[s] with similar restrictions court have enforced in the past") (first *citing Vacco Indus., Inc. v. Van Den Berg*, 6 Cal. Rptr. 2d 602, 613 (1992), modified (Apr. 14, 1992)) (holding misappropriation of trade secrets warranted trial court enjoining defendants from further use and enjoyment of plaintiffs' trade secrets); and then *citing Peerless Oakland Laundry Co. v. Hickman*, 205 Cal. App. 2d 556, 560-61 (Ct. App. 1962) (finding a court may appropriately limit injunction to customers of whom defendant obtained knowledge while employed by plaintiff)).

Here, Plaintiff does not request a broad injunction to prevent Defendant from directing former employes to perform their job responsibilities.  Instead, Plaintiff seeks only to protect confidential and proprietary information rightfully owned by its business and in protection of its customers.  TRO 18-19.  Plaintiff even encourages that the former employees remain with Defendant to exercise the experienced they have gained.  TRO Mot. 19.  There appears to be no conflict with Plaintiff's public policy argument in support of granting an injunction.  The consequences both minimize damage for Plaintiff's business and reduce unwanted disclosure of customers that have entrusted Plaintiff to protect its information.  Accordingly, these circumstances regarding public policy weigh in favor of injunctive relief for Plaintiff.

### D.    Likelihood of Success of the Merits/Serious Question

Plaintiff alleges causes of action five causes of action against Defendant for violations under (1) California Unfair Competition Law, (2) intentional interference with prospective economic advantage, (3) negligent interference with prospective economic advantage, (4) tortious interference with contract, and (5) California Penal Code section 502.  TRO Mot. 11-16.

Showing "serious questions going to the merits" requires more than establishing that "success is more likely than not," and it requires a plaintiff to demonstrate a "substantial case for relief on the merits."  *Leiva–Perez v. Holder*, 640 F.3d 962, 967 (9th Cir.2011).  And even where success on the merits is likely or "serious questions" are raised, an injunction "is not a remedy

United States District Court
Northern District of California

which issues as of course." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311 (1982).

### 1. Plaintiff is Likely to Succeed on the Merits of its Claim Under California Penal Code Section 502.

Plaintiff contends it is likely to succeed on its claim against Defendant for violation of California Penal Code section 502. TRO Mot. 12-13; Cal. Pen. Code § 502. Plaintiff argues MasonMac knowingly violated the statute when using former employees to access its computers and computer systems to copy thousands of pages of documents without authorization. TRO Mot. 13. Plaintiff discovered such when Defendant produced a portion of Plaintiff's files in compliance with a discovery order. *Id.* As a result, Plaintiff says Defendant not only violated section 502, but also continues to engage in taking this information by not agreeing to sequester the information to protect Axia's implicated customers. *Id.* The Court finds that Plaintiff is likely to prevail on the merits.

To establish a claim under Penal Code section 502, the plaintiff must show that the defendant, "without permission, knowingly accessed, copied, or made use of any data from a computer, computer system, or computer network, or took or copied any supporting documents, whether internal or external to a computer, computer system or computer network." Cal. Pen. Code § 502. "Access is defined as to gain entry to, instruct, ... or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." *United States v. Christensen*, 828 F.3d 763, 788–89 (9th Cir. 2015) (*citing* Cal. Penal Code § 502(b)(1)) (internal quotation marks omitted).

Here, Plaintiff shows it did not give permission to Defendant or any of Axia's former employees to access confidential information on Plaintiff's computers or computer systems to transmit to Defendant. TRO Mot. 13; Petty Decl. ¶¶ 11-12. This is evidenced by Plaintiff's employee agreements concerning the "confidential information" and "exclusive employment" provisions, which all former employees must execute. TRO Mot. 3-4. For example, Plaintiff explains that former employee Don Bartolomucci sent customer lists containing hundreds of Axia customers' sensitive information to his personal email from his Axia work computer. TRO Mot. 6; Schwartz Decl. ¶ 6. Afterward, Bartolomucci deleted the email and then deleted his trash folder

United States District Court
Northern District of California

1  from his Axia work computer.  *Id.*  Plaintiff successfully recovered the email and screenshots of

2  the information taken.  *Id.*  Following Bartolomucci's departure from Axia to MasonMac, Plaintiff

3  also discovered meetings between MasonMac agents and Axia employee's before ending their

4  employment relationships with Plaintiff.  Petty Decl. ¶ 11.  Finally, Defendant's compliance with

5  the discovery order revealed that a portion of the files Bartolomucci sent to his personal email

6  were among those identified from Defendant's compliance with the discovery order.  TRO Mot. 9

7  (emphasizing Defendant's denial of accessing Axia's data "was a clearly false representation").[3]

8  Therefore, Plaintiff has made a sufficient showing of Axia's likelihood for success on the merits

9  of its Penal Code section 502 claim.

**2.      Plaintiff is Likely to Succeed on the Merits of its Claim Under California's Unfair Competition Law.**

12  Plaintiff claims that it is likely to succeed on the merits of its California Unfair

13  Competition Law claim because MasonMac induced former employees to violate their contractual

14  and fiduciary duties when violating California Penal Code section 502.  TRO Mot. 14.  Plaintiff

15  contends these actions also violated Gramm-Leach-Bliley, which requires written consent from a

16  customer when transferring information between mortgage lenders.  *Id.* (*citing* 15 U.S.C. §§ 6801,

17  *et seq.*).  The Court finds these allegations sufficient as presented.

18  California's Unfair Competition Law prohibits "unfair competition," defined as "any

19  unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. C. § 17200, et seq.

20  Under California Penal Code section 502 a civil action may be brought to recover expenses related

21  to investigating the unauthorized computer access.  *Verio Healthcare, Inc. v. Super. Ct.* (2016) 3

22  Cal. App. 5th 1315, 1321 fn. 3.  A person violates Penal Code section 502 when they

23  "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a

24  computer, computer system, or computer network, or takes or copies any supporting

25  documentation, whether existing or residing internal or external to a computer, computer system

26

27  [3] "August 9, 2023: "Likewise, MasonMac has confirmed to Axia that it never sought access to any Axia database or customer list and is aware of no other situation similar to that of Mr.

28  Bartolomucci." Opp'n to Axia's Ex Parte Appl. at 13, ECF No. 21. (emphasis added).  Plaintiff argues "[t]his was a clearly false representation to this Court."  TRO Mot. 9.

or computer network."

Here—despite Defendant's repeated assurances that it was not in possession of any of Axia's documents—Defendant subsequently produced over 73,000 pages that were generated from 13 different former Axia employees.  Schwartz Decl. ¶ 12; TRO Mot. 1.  Approximately one month later, Defendant confirmed that approximately 15,000 of Axia's documents had been uploaded to Defendant's computer systems and needed to be sequestered.[4]  TRO Mot. 10. Defendant did not, however, agree to return said documents to Axia.  TRO Mot. 1.  As such, it is likely that Plaintiff will prevail on the merits of the UCL claim under the unlawful prong.

### 3. Plaintiff is Likely to Prevail on its Claim for Intentional Interference with Prospective Economic Advantage.

Plaintiff contends it is likely to prevail on its intentional interference with prospective economic advantage claim.  TRO Mot. 15.  Specifically, Axia contends it has demonstrated multiple distinct wrongdoings on the part of Defendant.  *Id.*  For example, Plaintiff says it shows how MasonMac attempts to divert or disrupt Axia's prospective business relationships.  Plaintiff is likely to prevail on the merits.

> Intentional interference with prospective economic advantage has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action.

*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc*., 2 Cal.5th 505, 512 (2017).

First, there is evidence of the existence of an economic relationship between the plaintiff and a third party, which contains the probability of future economic benefit to plaintiff.  *Id*.  The Axia information revealed to be in Defendant's possession includes detailed customer lists

---

[4] "September 15, 2023: Email from MasonMac agreeing that approximately 15,000 of Axia's documents, which had been taken by custodian Karrie Vogt and uploaded to MasonMac's systems, needed to be sequestered, as they contained highly confidential information, including, but not limited to, customers' financial documents. This is a tacit admission of MasonMac's wrongdoing, and evidences an obligation on its part to correct the issue."  TRO Mot. 10; Schwartz Decl.  ¶ 13.

United States District Court
Northern District of California

1   containing highly sensitive and confidential customer information.  Schwartz Decl. ⁋ 12.  For

2   example, Defendant is in possession Axia's customers' FICO scores, loan applications and

3   amounts, title/escrow information, bank statements, credit reports and statements, tax returns,

4   social security forms and statements, paystubs, etc.  *Id*.  Axia's possession of such information

5   reflects that not only did it have an economic relationship with its customers, but that the

6   relationship was to Axia's benefit as a mortgage lender.

7       Second, Defendant was clearly aware of the relationship between Plaintiff and its

8   customers.  Since January 2022, at least 40 people have departed from Axia and have been

9   working for Defendant.  *See* Hoyt Decl. ⁋ 22 in Supp. of Mot. for Prelim. Inj., ECF 20-1.  The

10  detailed customer lists and confidential customer data came to be in Defendant's possession

11  through Axia's former employees.  *See* Hoyt Decl. ⁋ 22.

12      Third, the record reflects that Defendant committed intentional wrongful acts designed to

13  disrupt the relationship between Axia and its customers.  The information, including detailed

14  customer lists and confidential customer data, was gathered in order to help further Defendant's

15  business as a competing mortgage lender.  All the data taken from Axia's computers and computer

16  systems without authorization were uploaded to Defendant's computers and computer system.

17  Schwartz Decl. ⁋⁋ 12-13, Ex. I, ECF No. 39-1.  The record reflects that the acts were intentional

18  and wrongful.  *Id*.

19      Fourth, Plaintiff asserts that Defendant's conduct vis-à-vis Axia employees has resulted in

20  actual disruptions between plaintiff and its now-former-employees which were hired to add value

21  to Axia.  TRO Mo. 14-15.  For example, Ryan Shaffer, a former Regional Manager at Axia, but

22  current E.V.P. of National Production at MasonMac, organized a videocall with then-current Axia

23  branch managers.  The call was titled "CONFIDENTIAL: MasonMac Ops Call – Don

24  Bartolomucci & Rueben Conception." Petty Decl. ⁋ 11.

25      Lastly, the record reflects that Plaintiff has sustained economic harm as a result of

26  Defendant's conduct.  Plaintiff's Florida, Oregon, Washington, and Minnesota branches have been

27  decimated by the loss of at least 40 employees that have since started working for Defendant.

28  Hoyt Decl. ⁋ 28.  Additionally, Plaintiff claims to have lost the goodwill associated with those

United States District Court
Northern District of California

branches, in addition to the confidential and propriety information these employees took with them.  *Id.* at ¶¶ 26, 28

In light of the foregoing, it is likely that Plaintiff will prevail on its claim for intentional interference with prospective economic advantage.

### 4. Plaintiff is Likely to Prevail on its Claim for Negligent Interference with Prospective Economic Advantage.

Plaintiff contends it is likely to prevail on its negligent interference with prospective economic advantage claim with three examples of wrongdoing.  TRO Mot. 15.  First, Axia claims MasonMac directly or indirectly soliciting Axia's borrowers to MasonMac with the help of Axia's employees and confidential information.  TRO Compl. ¶ 53.  Plaintiff also asserts that Defendant actively diverted Axia's customers to MasonMac with the help of Axia's employees and confidential information.  *Id.*  Finally, Axia accused MasonMac of misusing Axia's computer systems and networks without permission or authorization to access and misappropriate.  *Id.*

Negligent interference with prospective economic advantage requires plaintiff to show the same elements as intentional interference with prospective economic advantage with two exceptions: Unlike a claim for intentional interference, negligent interference only requires a showing that defendant "failed to act with reasonable care" instead of the higher standard of "intentional wrongful conduct."  *Compare North American Chemical Co. v. Superior Court*, 59 Cal.App.4th 764, 786 (1997) *with Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc*., 2 Cal.5th 505, 512 (2017).  Additionally, "[t]he tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care."  *LiMandri v. Judkins* 52 Cal.App.4th 326, 348 (1997) (internal citation and quotation marks omitted.)

Although Plaintiff does not expressly address whether Defendant owes it a duty in the motion for the temporary restraining order, the complaint asserts that  Defendant "owed a duty of care to Axia  because its recruitment and onboarding of several members from Axia's Florida, Oregon, Washington or Minnesota branches could not be performed without a direct effect on Axia's business."  Compl. ¶ 51.  Moreover, Plaintiff's former employees that now work for Defendant in *arguendo* continue to owe a duty pursuant to the terms of their respective

employment agreements that continue after employment separation.  Mot. TRO 3.  As such, it is likely that Plaintiff will succeed on the merits of its negligent interference with prospective economic advantage claim at least as to its former employees that disclosed confidential customer information in violation of their employment agreements.

> **5.    Plaintiff is Likely to Succeed on its Claim for Tortious Interference with a Contract.**

Plaintiff contends it is likely to succeed on its claim for tortious interference with a contract.  TRO Mot. 14.  "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 (internal citations omitted.)

Principally, Plaintiff argues Defendant was aware of Axia's agreements with former employees binding them to their duty of confidentiality and loyalty.  *Id.*  In other words, Defendant understood former employees were responsible for protecting Axia's possession of sensitive, confidential, and proprietary information regarding its business and customers.  TRO Mot. 14.  In addition Plaintiff notes that at least 40 Axia employees have departed to assume employment at MasonMac whom all entered agreements and were well advised of their contractual obligations.  The Court finds that Plaintiff's arguments are sufficient and are likely to prevail on the merits.

> **a.    Plaintiff entered valid agreements with its former employees.**

Notably, Plaintiff explains that it "all former Axia employees are bound by similar Confidentiality and Loyalty Provisions within their Employment Agreements."  TRO Mot. 4; Hoyt Decl. ¶ 16.  Plaintiff provides an example of the agreements, provisions therein, and establishes that a valid contract exists between Axia and its former employees.  *Id.* Therefore Plaintiff's agreements with its former employees are valid.

//

### b.   Defendant knew or should have known by extension of Plaintiff's contracts with former employees.

Next, Plaintiff argues that Defendant knew or should have known that Axia's former employees were bound to their confidentiality and loyalty agreements.  TRO Mot. 4; Hoyt Decl. ¶ 16.  This aside, Plaintiff adds that a former employee, Ryan Shaffer—a former senior leader and regional manager at Axia—knew former Axia employees were contractually bound to the confidentiality and loyalty agreements.  TRO Mot. 14.  Plaintiff supports this argument with the notion that 40 Axia employees have transitioned to MasonMac since January 2022.  TRO Mot. 15; Hoyt Decl. ¶ 22.  And by extension, as Shaffer knew of these obligations, Defendant also should have known that its conduct would violate these obligations.  TRO Mot. 6, 14; Hoyt Decl. ¶ 13.

To be sure, Plaintiff explains—with sufficient evidence—that Shaffer arranged a meeting to recruit Bartolomucci, another regional manager, who Plaintiff caught breaching the terms and duties contained in the agreement signed before exiting Axia.  TRO Mot. 14.  In sum, Bartolomucci knew he breached his duty of confidentiality when transmitting Axia's information to his personal email; Shaffer, an agent of MasonMac, knew this conduct breached the agreement he too entered prior to his departure.  As a result, it is unlikely Defendant lacked knowledge about these breaches, given the two higher ranking employees under its purview.  TRO Mot. 14; Hoyt Decl. ¶ 13, 23.  Thus, Defendant likely had some knowledge of transitioning Axia employees' agreements and duty to keep Axia information confidential.

### c.   Defendant's intentional acts were designed to induce a breach or disruption of the contractual relationship.

Plaintiff  argues the breaches observed by 13 of its former employees was intentional. TRO Mot. 14.  In particular, Plaintiff again examines the relationship between Shaffer and Bartolomucci.  *Id.*  As both were former regional managers, they both were aware of their contractual agreements with Plaintiff.  *Id.*  Still, Shaffer recruited Bartolomucci and upon quitting, knew or should have known he was taking confidential information.  *Id.* at 15.  Thus, Plaintiff says Shaffer intended to interfere, and did so, because he asked Bartolomucci to take the information when arranging a meeting about Bartolomucci's transition to MasonMac.  *Id.*; Hoyt Decl. ¶ 22. There may have been a different reason for the actions of Bartolomucci and Shaffer—for instance,

they may have acted on their own and in their own interest.  However, Plaintiff provides shows a pattern of similar behavior with 12 other departing Axia employees.  TRO Mot. 1, 8; Schwartz Decl. ¶¶ 12-13 & Ex. I.  Thus, Plaintiff's argument that the acts were intention and designed to induce a breach are more concrete and sufficient to prevail on this element.

### d.     Defendant actually breached or disrupted the contractual relationship.

Here, former employees agreed to protect confidential information at Axia when transitioning to other means of employment.  TRO Mot. 3.  Defendant turned over an immense number of documents recovered from Plaintiff's business as the direct result of former employees bringing the information from Axia to MasonMac.  TRO Mot. 8; Schwartz Decl. ¶¶ 12-13 & Ex. I. Plaintiff confirmed all the information disclosed was provided without authorization from Axia's computers.  Mot. 8.  Therefore, the contractual relationships were breached.

### e.     Plaintiff has incurred damage.

By nature of the breached of confidentiality agreements with former employees, Plaintiff minimally has suffered damage from an unfair competitor standpoint.  *Am. Republic Ins. Co. v. Union Fid. Life Ins. Co.*, 470 F.2d 820, 825 (9th Cir. 1972) (finding that use of customer lists by former employees constituted unfair competition).  As Plaintiff has connected Defendant's agents recruiting employees from Axia and this resulted in a massive breach of confidential consumer data—to an extent unknown—the Court finds that Plaintiff is likely to succeed on establishing that Defendant caused Axia some degree of damage.

For the foregoing reasons, Plaintiff is likely to succeed on the merits of its tortious interference claims.

## V.     CONCLUSION

Plaintiff has established a sufficient showing of immediate or irreparable harm resulting from Defendant's possession of confidential and proprietary information.  As a result, Axia and its customers face a significant risk of suffering irreparable harm and loss if MasonMac, its agents, and employees are permitted to destroy, keep, use, copy, and enjoy the unlawfully obtained confidential information, data, and property, among other content, of Axia for their own personal

1  use and competitive benefit.

2  Also, Plaintiff has made a sufficient showing of Axia's likelihood for success on the merits

3  of its claims under (1) California Unfair Competition Law, (2) intentional interference with

4  prospective economic advantage, (3) negligent interference with prospective economic advantage,

5  (4) tortious interference with contract, and (5) California Penal Code section 502.

6  In addition, Plaintiff has made a substantial showing that the rights of Axia—with respect

7  to its property, proprietary and confidential customer information, competitive interests,

8  employment agreements with former Axia employees, California Penal Code section 502(c), and

9  the California Unfair Competition Law—have been and are at risk of further violation by

10  MasonMac and its agents and employees, unless restrained therefrom.

11  In balancing the effect of an injunction against the equities and hardships of both parties,

12  the Court finds the likelihood of Plaintiff's success on the merits and the risk of irreparable harm

13  tips the balance of equities in Axia's favor.  During this stage of proceedings, the risk of

14  competitive harm to Axia from MasonMac's use of its customer lists and accompanying data

15  outweighs the any reasonably identifiable harm to Defendant.  Public interest considerations also

16  weigh in favor of injunctive relief for Plaintiff when balancing the parties' competitive business

17  interests with protecting consumers' private, confidential information.

18  **IT IS HEREBY ORDERED THAT:**

19  A Temporary Restraining Order is issued immediately.

20  The Court enjoins and restrains MasonMac, directly or indirectly, and whether alone or in

21  concert with others, including any officer, agent, representative, and/or employee of MasonMac,

22  pending the preliminary injunction hearing or further Order of this Court, from destroying, taking,

23  copying, using, disclosing, or transmitting for any purpose, Axia's confidential customer

24  information, and the names, addresses, telephone numbers, account numbers, and other

25  information related to the Axia customers and the accounts in Axia's records.

26  MasonMac, and all those acting in concert with MasonMac who receive notice of this

27  Order, including any officer, agent, employee, or representative, are specifically ordered to not

28  destroy (e.g., shredding, deleting, etc.) any of the documents referenced herein.  MasonMac shall

United States District Court
Northern District of California

return to Axia no later than seven (7) days after this Order is entered, any and all information, materials, documents, files, or data, in whatever form, and any copies (including electronic files stored on any portable electronic medium, including, but not limited to, thumb drives, portable hard drives, DVDs, CDs, or any other electronic storage device) thereof, containing, reflecting, or referring to any of Axia's confidential or proprietary data or information, including, without limitation, customer information.

MasonMac is ordered to appear **in person** before the Court on **October 3, 2023, at 10:00 a.m.** If there is no opposition or request for modification, the Temporary Restraining Order will extend to November 7, 2023.

This Order shall take effect immediately and shall remain in full force until the hearing on the order to show cause and preliminary injunction, set for **November 7, 2023**, **at 2:00 p.m. in person.** If Defendant complies with this order to the Court's satisfaction before **October 3, 2023**, it may vacate the hearing on the Temporary Restraining Order.

Axia must serve the Temporary Restraining Order and all supporting pleadings and papers on MasonMac, pursuant to L.R. 65-1, by September 21, 2023.

In view of the nature of the controversy, and in the discretion of the Court, a bond is deemed to be unnecessary.

This resolves docket no. 39.

**IT IS SO ORDERED.**

Dated: September 20, 2023

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

22