UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIA FINANCIAL, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MASON MCDUFFIE MORTGAGE CO.,<br><br>    Defendant. | Case No.  23-cv-03256-TLT<br><br>**ORDER DISMISSING CASE**<br><br>Re: Dkt. No. 1 |

Before the Court is Defendant's Motion to Dismiss ("Motion"), ECF No. 17. For the reasons below, the Motion is **GRANTED**.

**I.  BACKGROUND**

The following facts come from the Complaint and are taken as true for the purposes of this Order. Plaintiff Axia Financial, LLC ("Axia") and Defendant Mason McDuffie Mortgage Co. ("MasonMac") are both residential mortgage lenders. Compl. ¶¶ 1, 8. ECF No. 1. All employees who work for Plaintiff sign a contract that "restrict[s] the use, copying and taking of confidential customer lists, and prohibit[s] them from working on behalf of competitors." *Id.* ¶ 18. An example defines confidential information broadly, to encompass information about customers, information about Plaintiff's business, and any other private information related to Plaintiff:

> "[ ] Confidential Information" means any and all of the following information regardless of whether such information is incorporated in any tangible or intangible record or document: (i) non-public information of customers and potential customers, (ii) information relating to Axia's method of operations, customers, prospective customers, trade name and trade style, marketing, promotional material, finances, business plans or strategy, operating manuals, training materials, policies, and personnel records; and (iii) any other information in the possession of Axia that is not generally known to the public, whether or not specifically denoted by Axia as confidential or proprietary. *Id.* ¶ 24.

The contract prohibits employees from "disclos[ing] or us[ing]" any confidential

1  information, during their employment or afterwards, "except as specifically authorized by Axia
2  and for Axia's benefit." *Id.* Plaintiff alleges that Defendant knew about this confidentiality
3  provision in its contracts, as one of Defendant's employees used to work for Plaintiff. *Id.* ¶¶ 28,
4  33.

5   Since January 2022, Defendant has induced nearly thirty of Plaintiff's employees to breach
6  their contracts, leave Plaintiff, and join Defendant. *Id.* ¶ 3. In doing so, Defendant "induced these
7  Axia employees to take confidential business and client information with them, in violation of
8  their employment agreements with Axia." *Id.* ¶ 4. The employees who have left include "Loan
9  Originators, Branch Managers, Operations Managers, Loan Processors, and others." *Id.* ¶ 29.

10   To induce employees to breach their contracts and leave, Defendant "offer[ed] them
11  lucrative employment packages." *Id.* ¶ 4. What is more, a "high-level Axia employee was acting
12  at MasonMac's direction, as its agent and co-conspirator, to encourage and abet Axia employees
13  to quit and violate the terms of their contracts." *Id.* ¶ 30. By way of example, Plaintiff briefly
14  recounts what happens with Don Bartolomucci, one of its higher-level employees. *Id.* ¶¶ 19, 31–
15  36.

16   In May 2023, Ryan Shaffer, an executive vice president for Defendant—and a former
17  regional manager for Plaintiff—set up a meeting with Bartolomucci and other employees of
18  Plaintiff's. *Id.* ¶ 32. Shaffer "engaged in efforts to encourage and abet Axia employees to engage
19  in a coordinated solicitation effort on behalf of MasonMac, and to quit and take confidential
20  customer lists from Axia's computers and computer systems in violation of the terms of their
21  duties to Axia." *Id.* ¶ 33. A few weeks after the meeting, on June 6, Barolomucci emailed one of
22  Plaintiff's customer lists "with hundreds of customers' confidential information, including contact
23  information and highly sensitive financial information" from his work computer to his personal
24  email. *Id.* ¶ 34. He sent this email "at the direction of MasonMac." *Id.* ¶ 34.

25   About three weeks later, Plaintiff filed suit in this Court, bringing five claims under state
26  law. *Id.* ¶¶ 37–71. In August, Defendant filed this Motion. That same day, Plaintiff moved for a
27  preliminary injunction, which is set for a hearing on February 27, 2024. *See* Mot. Prelim. Inj.,
28  ECF No. 20; Order, ECF No. 77. And in September, Plaintiff moved ex parte for a temporary

restraining order, which the Court granted.  Mot. Temp. Restr. Order, ECF No. 39; Sept. 20, 2023, Order, ECF No. 43.  Relevant here, the Court enjoined Defendant from "destroying, taking, copying, using, disclosing, or transmitting for any purpose, Axia's confidential customer information, and the names, addresses, telephone numbers, account numbers, and other information related to the Axia customers and the accounts in Axia's records."  Sept. 20, 2023, Order 21.  After oral argument from both sides, the Court extended the temporary restraining order, and it is still in effect.  *See* ECF Nos. 57, 64, 77.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

#### A. Plaintiff's claims are superseded by CUTSA.

Defendant first argues that all of Plaintiff's claims are superseded by California's Uniform Trade Secrets Act ("CUTSA"). Mot. 3–4. Plaintiff pushes back, pointing out that its claims do not involve trade secret misappropriation and are predicated on other harms. Opp'n 3–8, ECF No. 23.

#### 1. CUTSA supersedes claims involving confidential information.

"California's Uniform Trade Secrets Act provides for the civil recovery of 'actual loss' or other injury caused by the misappropriation of trade secrets." *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) (quoting Cal. Civ. Code § 3426.3). "CUTSA includes a savings clause . . . that 'preempt[s] claims based on the same nucleus of facts as trade secret misappropriation.'"[1] *Id.* (first quoting *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal.App.4th 939, 962 (2009); and then citing Cal. Civ. Code § 3426.7).

Plaintiff argues that CUTSA does not displace its claims because they involve confidential information that does not rise to the level of a trade secret. Opp'n 3–5. "Although the California Supreme Court has not clearly defined the scope of CUTSA's supersession of claims arising from the alleged misappropriation of non-trade secret information, the majority of district courts that have considered [California law] have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA." *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-CV-06846-EJD, 2021 WL 6049906, at *3 (N.D. Cal. Dec. 21, 2021) (internal quotation marks omitted) (collecting cases). Cases that have reached the contrary conclusion—including the cases cited by Plaintiff—either predate the relevant California case law or have not considered the relevant California case law.

---

[1] Though courts have referred to "preemption" under CUTSA, "the [California] Supreme Court has criticized the use of 'preempt' to describe the supersession of one state law by another." *Id.* at *2 n.3 (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 n.14 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 246 P.3d 877 (2011) (cleaned up)). Instead of "preempting" other statutes, CUTSA "displace[s]" or "supersede[s]" them. *Id.* (quoting *Silvaco*, 184 Cal. App. 4th at 233 n.14).

*See SunPower*, 2012 WL 6160472, at *7 (collecting cases).  So, Plaintiff is incorrect—CUTSA "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011).

### 2. CUTSA has two exceptions.

Despite CUTSA's wide reach, it does not displace claims in two circumstances: first, when the claim "allege[s] facts showing that the plaintiff's property right in the information at issue stems from some provision of positive law on grounds qualitatively different from grounds upon which trade secrets are considered property." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1063 (N.D. Cal. 2017) (citing *Total Recall Techs. v. Luckey*, No. C 15-02281 WHA, 2016 WL 199796, at *7 (N.D. Cal. Jan. 16, 2016)).  "If the basis of the alleged property right is in essence that the information . . . is not generally known to the public, then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." *SunPower*, 2012 WL 6160472, at *5 (cleaned up).  "To permit otherwise would allow plaintiffs to avoid the preclusive effect of CUTSA." *Id.*

Second, CUTSA does not supersede claims that "allege wrongdoing materially distinct from the wrongdoing alleged in a CUTSA claim." *Waymo*, 256 F. Supp. 3d at 1063 (citing *Total Recall Techs.*, 2016 WL 199796, at *7).  Put differently, CUSTA "supersedes 'claims based on the same nucleus of facts as [a] misappropriation of trade secrets claim.'" *Total Recall Techs.*, 2016 WL 199796, at *7 (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009)).  For instance, in *SunPower*, the court held that the plaintiff's claims were superseded because they "incorporate[d] the same factual allegations regarding [the] [d]efendants' unauthorized access and use of [ ] information" as the plaintiff's trade secret claim. *SunPower*, 2012 WL 6160472, at *13.  Ultimately, the claims were displaced by CUTSA because all of them alleged that the defendants "acquir[ed], disclos[ed], and/or us[ed], without consent . . . proprietary information." *Id.*

At no point does Plaintiff allege or argue that a provision of positive law creates a property

5

right in the confidential information its employees took. *See generally* Compl.; Opp'n. Thus, to determine whether CUTSA displaces Plaintiff's claims, the Court asks whether they share the same nucleus of facts as a trade secret claim. *See Waymo*, 256 F. Supp. 3d at 1063.

### 3. CUTSA supersedes Plaintiff's section 502 claims.

The Court first considers whether Plaintiff's claims under California Penal Code section 502(c)(1), (c)(2), (c)(3), and (c)(7) are superseded by CUTSA. *See* Compl. ¶¶ 65–68.

#### i. CUTSA can supersede a section 502 claim.

"No published California state court cases address 'whether CUTSA supersedes a claim brought under [Section 502(c)], and federal courts are divided on the issue.'" *Alert Enter., Inc. v. Rana*, No. 22-CV-06646-JSC, 2023 WL 2541353, at *6 (N.D. Cal. Mar. 16, 2023) (first quoting *Phonexa Holdings, LLC v. O'Connor*, No. B308548, 2022 WL 3698220, at *28 (Cal. Ct. App. Aug. 26, 2022); and then citing *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017)). Though federal courts are divided, it appears that most of them have held that CUTSA supersedes section 502. *See Phonexa Holdings*, 2022 WL 3698220, at *28 (collecting cases). Indeed, Plaintiff's only example of a case holding that section 502 is not displaced is *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056 (N.D. Cal. 2018). *See* Opp'n 6. There, the court held that a claim under section 502 was not superseded because it was a statutory claim "for use of misappropriated information secured from a computer 'hack,' as opposed to [a] common law claim[] based on misappropriation of business information." *Synopsys*, 313 F. Supp. 3d at 1074–75 & 1075 n.15.

But the Court respectfully disagrees with the reasoning in *Synopsys*. For one, the case provides no basis for distinguishing between statutory claims and common law claims. *See id.* In fact, CUTSA regularly displaces statutory claims. *See, e.g.*, *Waymo*, 256 F. Supp. 3d at 1064 (holding CUTSA displaces a claim under California's Unfair Competition Law). Nor are section 502 claims protected from CUTSA because they cover hacks. "To state a claim under Section 502, a plaintiff must allege only knowing access, not unauthorized access." *Alert Enter.*, 2023 WL 2541353, at *5 (citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016)). "Simply using valid login credentials and subsequently misusing the information obtained

6

constitutes a Section 502(c) violation." *Id.* (first citing *Christensen*, 828 F.3d at 790; and then citing *Henry Schein*, 2017 WL 783617, at *5). Because a section 502 claim does not require unauthorized access, the *Synopsys* court erred by distinguishing between "a computer hack" and a normal misappropriation claim. *See id.*; *Synopsys*, 313 F. Supp. 3d at 1075 n.15. The Court thus agrees with the majority of district courts, holding that CUTSA can displace claims under section 502. *See Alert Enter.*, 2023 WL 2541353, at *6; *Best Label Co. v. Custom Label & Decal, LLC*, No. 19-CV-03051-SI, 2022 WL 1189884, at *4 (N.D. Cal. Apr. 20, 2022); *Henry Schein*, 2017 WL 783617, at *5.

### ii. Plaintiff's section 502 claims involve misappropriating confidential information.

As with other kinds of claims, CUTSA displaces a section 502 claim when the two share common allegations. For instance, in *Best Label*, the court explained that section 502(c) has two requirements: knowing access into a computer system and unauthorized use of the system's data. 2022 WL 1189884, at *4. The plaintiff's section 502 was displaced because the "plaintiff [could not] allege the second 'use' element without relying on facts from its CUTSA claim." *Id.*; *see also Henry Schein*, 2017 WL 783617, at *5 ("[The plaintiff] cannot plausibly allege the second 'use' element of section 502(c)(2) without relying on facts from its CUTSA claim.").

Similarly, just as CUTSA claims rely on "acquiring, disclosing, and/or using, without consent . . . proprietary information," *SunPower*, 2012 WL 6160472, at *13, Plaintiff's section 502 claims involve either unauthorized access to a computer system or unauthorized use of the system's data, *see* Cal. Penal Code §502(c)(1)–(3), (7). Indeed, claims are displaced when they "incorporate the same factual allegations regarding [a] [d]efendants' unauthorized access and use of [ ] information" as a trade secret claim. *SunPower*, 2012 WL 6160472, at *13. And Plaintiff's section 502 claims allege unauthorized access and use. *See* Compl. ¶¶ 65–68. CUTSA thus displaces Plaintiff's 502 claims. *See Best Label*, 2022 WL 1189884, at *4; *SunPower*, 2012 WL 6160472, at *13.

### 4. CUTSA supersedes Plaintiff's UCL claims.

The Court next analyzes Plaintiff's claims under California's Unfair Competition Law

7

("UCL"). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." *See* Cal. Bus. & Prof. Code § 17200. Plaintiff first claims that Defendant's actions were unlawful because they violate section 502. *See* Compl. ¶ 39. But Plaintiff's section 502 claim is superseded, so it cannot provide the basis for Plaintiff's UCL claim.

Plaintiff next claims that Defendant's actions were unfair. *See* Compl. ¶¶ 40–42. Plaintiff's allegations here are sparse, but ultimately Plaintiff alleges that Defendant violated the UCL for "us[ing] Axia's confidential information." *Id.* ¶ 42; *see also* Opp'n 13 ("[T]he Ninth Circuit has found that [the improper use of customer lists by former employees] constitutes unfair competition."). Because this claim relies on allegations about Defendant "acquiring, disclosing, and/or using, without consent . . . proprietary information," it is superseded by CUTSA too. *See SunPower*, 2012 WL 6160472, at *13; *see also Total Recall Techs.*, 2016 WL 199796, at *10 (holding that UCL unfair and unlawful claims were superseded).

### 5. CUTSA supersedes Plaintiff's prospective economic advantage claims.

Plaintiff's claims for intentional and negligent interference with prospective economic advantage fail for a similar reason. Such claims involve "(1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship"—or, for negligence cases, a defendant's failure to act with reasonable care—"(4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (quoting *Youst v. Longo*, 729 P.2d 728, 733 n.6 (1987)); *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1005 (2018) (citations omitted).

Both claims allege that Defendant disrupted Plaintiff's relationship with past and potentially future borrowers by "(a) directly or indirectly soliciting Axia's borrowers to MasonMac with the help of Axia's employees and confidential information; (b) actively diverting Axia's borrowers to MasonMac with the help of Axia's employees and confidential information; and (c) misusing Axia's computer systems and networks without permission or authorization to access and misappropriate Axia's and its borrowers' confidential and proprietary information."

Compl. ¶ 46, 53. Yet again, Plaintiff's allegations rest on the improper use of confidential information, triggering CUTSA. *See SunPower*, 2012 WL 6160472, at *13, 15 ("[A]llegations that [the defendant] misappropriated proprietary information regarding [the plaintiff's] customers . . . are superseded by CUTSA.").

This conclusion is thrown into starker relief by the decision in *Aavid Thermalloy LLC v. Cooler Master Co.*, No. 17-CV-05363-JSW, 2018 WL 11348438, at *3 (N.D. Cal. June 15, 2018), where the court held that CUTSA did not displace a claim for intentional interference. That was because the claim alleged that one company had accused another of infringing its products, rather than alleging that the company had misappropriated a trade secret. *Id.* Here, by contrast, the claim is superseded precisely because it alleges that Defendant "misappropriate[ed]" Plaintiff's confidential information. *See* Compl. ¶ 46, 53; *SunPower*, 2012 WL 6160472, at *13, 15.

### 6. CUTSA supersedes Plaintiff's tortious interference claim.

Finally, the Court assesses Plaintiff's claim for tortious interference with contract. "To state a viable claim for tortious interference with existing contracts, a plaintiff must plead: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts to induce a breach of the contractual relationship; (4) actual breach of the contractual relationship; and (5) resulting damage." *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1364 (N.D. Cal. 2013) (citing *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (1990)).

"[T]o maintain a cause of action for intentional inducement of contractual relations, plaintiff must plead that defendants engaged in an independently wrongful act." *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 478 (N.D. Cal. 2020) (citing *Ixchel Pharma, LLC v. Biogen, Inc.*, 930 F.3d 1031, 1037 (9th Cir. 2019)); *see also Reeves v. Hanlon*, 95 P.3d 513, 519–20 (2004). In *K.C. Multimedia*, for example, the plaintiff alleged that the defendants "engaged in intentional acts . . . by encouraging [an employee] to misappropriate . . . trade secrets and then by luring [the employee] to become an employee of [the defendant]," and the court consequently held that CUTSA applied. 171 Cal. App. 4th at 960–61.

Echoing *K.C. Multimedia*, Plaintiff alleges that "MasonMac intentionally induced

Bartolomucci and the other former Axia employees to breach the Confidentiality and Loyalty Provisions of their Employment Agreements by, among other things, inducing him to transfer Axia's confidential information to MasonMac . . . and to induce other members of Axia's . . . branches to resign and undertake employment with MasonMac." Compl. ¶ 60. Because Plaintiff alleges that Defendant induced its employees to misappropriate its confidential information and leave the company, this claim is also superseded by CUTSA, like the claim in *K.C. Multimedia*. *See* 171 Cal. App. 4th at 960–61.

In sum, CUTSA displaces all of Plaintiff's claims, as all of Plaintiff's claims rest on allegations of misappropriating confidential information.

### B.       Plaintiff is entitled to leave to amend.

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleadings with leave of the court. *See* Fed. R. Civ. P. 15(a)(2). "[L]eave shall be freely given when justice so requires," and this policy is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (first quoting Fed. R. Civ. P. 15(a); and then quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). This liberality should not be extended in the face of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Defendant argues that amendment would be futile here. Mot. 16–17. It contends that Plaintiff's claims are grounded in a contract that is void because it represents an invalid restraint on competition under California Business & Professional Code section 16600. *See id.* It is true that "[i]n California, 'every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.'" *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009) (quoting Cal. Bus. & Prof. Code § 16600). Yet, whether or not Plaintiff's contracts are void, "a court may enjoin tortious conduct as violative of either the Uniform Trade Secrets Act and/or the Unfair Competition Law." *Genasys Inc. v. Vector Acoustics*, LLC, 638 F. Supp. 3d

10

1135, 1149 n.8 (S.D. Cal. 2022) (quoting *Ret. Grp. v. Galante*, 176 Cal. App. 4th 1226, 1238 (2009) (cleaned up)). "[T]he conduct is enjoinable not because it falls within a judicially-created 'exception' to section 16600[] . . . , but is instead enjoinable because it is wrongful independent of any contractual undertaking." *Id.* (quoting *Galante*, 176 Cal. App. 4th at 1238); *see also Applied Materials*, 630 F. Supp. 2d at 1090 n.7 (collecting cases). Though courts have applied this principle to trade secrets claims, the Court finds it reasonable to extend it to claims concerning any confidential information, given CUTSA itself extends beyond trade secrets. Thus, the Court concludes that section 16600 does not bar Plaintiff's tort claims and that amendment is not futile.

In fact, courts regularly grant leave to amend in cases like this one. In *SunPower*, for example, the court granted leave to amend because "[the plaintiff] [ ] failed to allege facts showing that: (1) [its] non-trade secret proprietary information is made property by some law other than CUTSA, or (2) [its claims] are predicated on something other than the misappropriation of information of value." 2012 WL 6160472, at *16; *see also Total Recall Techs.*, 2016 WL 199796, at *10 (granting leave to amend a superseded claim). The same is true here. The Court thus finds that leave to amend is appropriate.

## C. CONCLUSION

Because CUTSA supersedes Plaintiff's claims, the Court granted Defendant's Motion. Plaintiff's Complaint is dismissed, with leave to amend on or before January 31, 2024.

**IT IS SO ORDERED.**

Dated: January 11, 2024

TRINA L. THOMPSON
United States District Judge