1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| AXIA FINANCIAL, LLC,<br><br>        Axia,<br><br>   v.<br><br>MASON MCDUFFIE MORTGAGE CO.,<br><br>        Defendant. | Case No.  23-cv-03256-TLT<br><br>**ORDER GRANTING IN PART,<br>DENYING IN PART, DEFENDANT'S<br>MOTION TO DISMISS**<br><br>Re: Dkt. No. 95 |

Before the Court is Defendant Mason McDuffie Mortgage Co.'s ("MasonMac") Motion to Dismiss. ECF No. 95. For the reasons stated below, the Motion is **GRANTED, IN PART, and DENIED, IN PART.**

## I.     PROCEDURAL HISTORY

On June 29, 2023, Axia Financial, LLC ("Axia") filed its complaint against MasonMac, asserting causes of action for (1) unfair competition pursuant to the California Business and Professions Code §§ 17200 et seq. ("UCL"), (2) intentional interference with prospective economic advantage, (3) negligent interference with prospective economic advantage, (4) tortious interference with contract, and (5) violation of California Penal code § 502(c). ECF No. 1.

On August 4, 2023, MasonMac moved to dismiss all claims. ECF No. 17. That same day, Axia moved for a preliminary injunction that would enjoin MasonMac from taking or sharing Axia's confidential information and would require MasonMac to return all of this information to Axia.  ECF No. 20. On September 18, 2023, Axia filed an *Ex Parte* Motion for a Temporary Restraining Order ("TRO") requesting the same relief on an expedited basis, alleging that MasonMac was destroying the confidential information. ECF No. 39. This Court granted the

1    motion the following day, and stated the TRO would stay in effect until a full hearing was held.

2    ECF Nos. 41, 43. Following the TRO hearing, the Court extended the TRO until the preliminary

3    injunction hearing. ECF No. 64, 77.

4    　　　　On January 12, 2024, this Court granted MasonMac's Motion to dismiss, with leave to

5    amend. ECF No. 90 ("Jan. 12 Order"). On January 29, 2024, Axia filed the First Amended

6    Complaint ("FAC"), which reasserted all causes of action from the Complaint, and added a cause

7    of action for aiding and abetting. ECF No. 92.[1] The FAC asserts claims for (1) tortious

8    interference with contract, (2) aiding and abetting, (3) intentional interference with prospective

9    economic advantage, (4) negligent interference with prospective economic advantage, (5)

10   violation of California Penal code § 502(c), and (6) unfair competition pursuant to the UCL. *Id.*

11   On February 12, 2024, MasonMac moved to dismiss the FAC. ECF No. 95 ("Motion").

12   **II.     REQUEST FOR JUDICIAL NOTICE**

13   　　　　Before the Court are two Requests for Judicial Notice.

14   　　　　On February 12, 2024, MasonMac filed a Request for Judicial Notice of the proceedings

15   captioned *Guild Mortgage Co., LLC v. CrossCountry Mortgage*, LLC (37-2022-00051488-CU-BT-

16   CTL (Cal. Super. Dec. 23, 2022) ("*Guild* Proceeding"), including the complaint, amended complaint,

17   and demurrer briefing and orders. Defendants claim that the case "establishe[s] Plaintiff's, and

18   Plaintiff's counsel's, roadmap for pursuing similar cases and a nearly identical manner, and courts

19   unilaterally rejecting the arguments Plaintiff is making in the present case." ECF No. 96.

20   　　　　On May 9, 2024, MasonMac filed another Request for Judicial Notice of the California Court

21   of Appeal's summary denial of the petition for a writ of mandate to vacate the trial court's demurrer in

22   the *Guild* Proceeding, and additional documents from the docket. ECF No. 114.

23   　　　　Rule 201(b) states that courts may judicially notice a fact that is not subject to reasonable

24   dispute because it (1) is generally known within the trial court's territorial jurisdiction, or (2) can be

25   accurately and readily determined from sources whose accuracy cannot be reasonably questioned.

26

27   _____

     [1] During the April 23 hearing, the Parties agreed that Plaintiff's filing of the FAC mooted its
28   Motion for a Preliminary Injunction. As such, the Court denies Axia's Motion for a Preliminary
     Injunction as moot.

*United States District Court*
*Northern District of California*

1    Courts may "'take notice of proceedings in other courts, both within and without the federal judicial

2    system, if those proceedings have a direct relation to matters at issue.'" *Tiedemann v. von Blanckensee*,

3    72 F.4th 1001, 1007 (9th Cir. 2023) (*citing Kipp v. Davis*, 971 F.3d 939, 945 n.2 (9th Cir. 2020)).

4         MasonMac seeks judicial notice of documents filed in a case that involves neither Axia nor

5    MasonMac. Mason Mac cites two cases as support for its request: *Bias v. Moynihan*, 508 F.3d 1212,

6    1225 (9th Cir. 2007) and *Bennett v. Medtronic, Inc*., 285, F.3d 801, 803 n.2 (9th Cir. 2002). In both

7    cases, the Ninth Circuit took judicial notice of proceedings that involved at least one of the parties to

8    the litigation. MasonMac did not provide any authority suggesting that judicial notice could be taken

9    of proceedings that do not involve any of the parties. Further, MasonMac states these documents

10   establish a "roadmap" for how these cases are pursued, and how "courts unilaterally reject the

11   arguments that Plaintiff is making in the present case." *See* ECF No. 114, at 2. Both assertions are

12   subject to reasonable dispute.  Likewise, MasonMac does not provide any argument to the contrary. As

13   such, both Requests for Judicial Notice are **DENIED**.

## III.    BACKGROUND

15        The following facts come from the Complaint and are taken as true for the purposes of this

16   Order. Axia and MasonMac are both residential mortgage lenders. FAC ¶¶ 1, 13. Employees who

17   work for Axia sign a contract ("Employment Agreement") that include an "Exclusive

18   Employment" clause, which states:

19            Exclusive Employment. During the term of this Agreement,
             Employee agrees that he/she shall not perform services for any
20           competitor of Axia or for other person or entity in the mortgage
             lending and/or real estate industries. Employee shall not submit or
21           permit or suffer any employee of the Branch to submit, any loan to
             any other mortgage broker, mortgage banker, wholesaler[,] or
22           financial institution.

23   FAC ¶ 29. The Employment Agreement also includes a "Confidential Information" clause,

24   in which employees agree not to disclose any of "Axia's Confidential information during

25   or after Employee's employment . . . ." FAC ¶ 30.  As defined, "Confidential Information"

26   includes information regarding customers, operations, and "any other information in the

27   possession of Axia that is not generally known to the public . . . ." *Id.*

28        In January 2022, MasonMac began inducing Axia employees to breach their contracts by

United States District Court
Northern District of California

having them recruit other Axia employees to join MasonMac.  In addition, newly recruited employees were asked to "disclose confidential business information to MasonMac [including] customers lists and loan files, and [to] divert Axia's customers toward MasonMac." *Id.* ¶¶ 2–3. MasonMac engaged with a variety of Axia employees, including "Loan Originators, Branch Managers, Operations Managers, Loan Processors, and others." *Id.* ¶ 35. It is noted that Branch Managers oversee the branch offices and supervise the loan originators and operational staff. *Id.* ¶ 18. Area Managers supervise Branch Managers and "manage sales and operations within a given geographic region." *Id.* ¶ 10. And finally, Regional Managers "oversee staff and recruit Area Managers and Branch Managers within a larger region." *Id.* ¶ 20.

The FAC identifies the following individuals:

1. **John Lewis, Former Axia President of Sales**: In exchange for a "lucrative employment package," Lewis worked "hand-in-hand with MasonMac" for a year while still working at Axia, "encouraging people to leave Axia and join MasonMac," and "disparaging Axia so that others would be more inclined to join . . . ." *Id.* ¶ 4; *see* ¶¶ 38c, d. Once Lewis "primed" his teams to leave, MasonMac executives Ryan Shaffer and Chuck Iverson would induce the area, branch, and regional managers to recruit their colleagues. *Id.* "Most, if not all," of Lewis's direct reports received an offer letter, or transitioned to MasonMac." *Id.* ¶ 36. Though Lewis "often knew of employee departures before they left, [he] failed to communicate those departures to other executives at Axia, preventing Axia from taking steps to retain its employees." *Id.* ¶ 37.

2. **Suzanne Hall, Former Axia Retail Sales Director and V.P. Regional Manager:** In April 2022, while still employed at Axia, Hall communicated with Iverson and Shaffer regarding "offer letters and promissory note[s]," for herself and her team members. *Id.* ¶ 38a. In June 2022, Hall received an offer letter with incentive compensation based on her "ability to persuade other Axia employees to defect to MasonMac." *Id.* ¶ 38b.

3. **Maria Gotsch, Former Axia Branch Manager**: While employed at Axia, Gotsch worked with Lewis to "put together a group to leave the company." *Id.* ¶ 38c. Gotsch eventually quit and joined MasonMac. *Id.*

United States District Court
Northern District of California

4. **Don Bartolomucci, Former Axia Area Manager:** While employed at Axia, Bartolomucci met with MasonMac employees and sent them copies of Axia confidential customer information. *Id.* ¶ 38g. MasonMac also induced Bartolomucci to "divert Axia's clients to MasonMac . . . ." *Id.*

5. **TC Smukalla, Former Area Manager**: After Lewis spoke to Smulkalla about "defecting to MasonMac, . . . Smulkalla recruit[ed] other then-current Axia employees to join MasonMac . . . ." *Id.* ¶ 38d. Smulkalla eventually joined MasonMac, and "brought the vast majority of [his] team with him . . . ." *Id.*

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Axia pleads factual content that allows the court to draw the reasonable inference that the MasonMac is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

1    *Id.* (quoting *Twombly*, 550 U.S. at 556).[2]

2    **V.    DISCUSSION**

3        **A.    California Uniform Trade Secrets Act ("CUTSA")**

4        "California's Uniform Trade Secrets Act provides for the civil recovery of 'actual loss' or

5    other injury caused by the misappropriation of trade secrets." *SunPower Corp. v. SolarCity Corp.*,

6    No. 12-CV-00694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) (quoting Cal. Civ.

7    Code § 3426.3). "CUTSA includes a savings clause . . . that 'preempt[s] claims based on the same

8    nucleus of facts as trade secret misappropriation.'" *Id.* (quoting *K.C. Multimedia, Inc. v. Bank of*

9    *America Tech. & Operations, Inc.*, 171 Cal .App. 4th 939, 962 (2009).  Despite CUTSA's wide

10   reach, it does not preempt claims in two circumstances: the claim is based on a property right that

11   is "qualitatively" distinct from the property right established in CUTSA; or the alleged

12   wrongdoing is "materially distinct from the wrongdoing alleged in a CUTSA claim." *Waymo LLC*

13   *v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1063 (2017).

14            **1.    CUTSA Supersedes Axia's Claims Based on Disclosure of Its**
                    **Confidential Information**

15       Axia reiterated its argument that CUTSA does not displace its claims because they involve

16   confidential information that does not rise to the level of a trade secret. Oppo., at 13. As the Court

17   explained in depth in its Jan. 12 Order, the Court rejects this argument and finds that CUTSA can

18   supersede claims based on disclosure of information that does not rise to the level of trade secrets.

19   *See Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-CV-06846-EJD, 2021 WL

20   6049906, at *3 (N.D. Cal. Dec. 21, 2021) ("Although the California Supreme Court has not clearly

21   defined the scope of CUTSA's supersession . . . the majority of district courts that have considered

22   [California law] have held that CUTSA supersedes claims based on the misappropriation of

23   information that does not satisfy the definition of trade secret under CUTSA.") Given that the

24   Court already held that CUTSA supersedes Plaintiff's claims based on disclosure of information,

25   and Plaintiff did not add any allegations, the Court finds that its claims are not based on materially

26

27   ──────────────

28   [2] "The court should freely give leave to leave [to amend] when justice so requires." Fed. R. Civ. P.
     15(a)(2)

6

distinct conduct that could avoid supersession.

Axia also argues that CUTSA does not supersede its claims because its claims are partially based on improper disclosure of its loans and loan files, and it has a property right in this information. To avoid supersession, a plaintiff must "allege[s] facts showing that the plaintiff's property right in the information at issue stems from some provision of positive law on grounds qualitatively different from grounds upon which trade secrets are considered property;" *Waymo LLC*, 256 F. Supp. 3d at 1063 (citing *Total Recall Techs. v. Luckey*, No. C 15-02281 WHA, 2016 WL 199796, at *7 (N.D. Cal. Jan. 16, 2016). "If the basis of the alleged property right is in essence that the information . . . is not generally known to the public, then the claim is sufficiently close to a trade secret claim that it should be superseded  . . . ." *SunPower*, 2012 WL 6160472, at *5

Axia claims that it has a property interest in its loans and loan files because of language found on the website for the Department of Financial Protection and Innovation ("DFPI"), the agency responsible for enforcing regulations on mortgage lenders. Axia argues that "mortgage loan originators can only operate under a license sponsored by a licensed lender," and the "Frequently Asked Questions" ("FAQ") on the DFPI website states that "[l]oan applications initiated under the authority of a [California Financing Law] or [California Residential Mortgage Lending Act] license are the property of the licensed sponsoring company . . . ." FAC ¶ 42. First, an FAQ on an agency's website does not constitute a "provision of positive law." And even if it did, official language describing certain information as "property" is not sufficient to avoid supersession. *See Waymo*, 256 F. Supp. 3d at 1063. Axia must also show that the property right is qualitatively different from the property right established by CUTSA, but Axia did not provide any explanation as to how property rights in loan files differ from property rights in trade secrets.

### 2.   CUTSA Does Not Supersede Axia's Claims Alleging Improper Recruitment and Diversion of Customers

If the alleged improper conduct "[does] not depend for its supposed wrongfulness on the use of trade secrets," it is not superseded by CUTSA. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 n.14 (2010) (holding that CUTSA did not supersede claims deriving from a

violation of judiciary injunction because the "legal consequences . . . were not affected by the status of the information as a trade secret."). For example, in *Henry Schein, Inc. v. Cook*, the court held that CUTSA did not supersede tortious interference claims that were based on defendant's improper solicitation of defendant's customers because the complaint did not allege that defendant "relied on misappropriated data when she took those actions." No. 16-cv-03166, 2017 WL 783617, at *3–4 (N.D. Cal. Mar. 1, 2017); *see Mattel, Inc. v. MGA Entmt., Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2011) (holding that CUTSA did not supersede plaintiff's aiding and abetting and breach of duty of loyalty claims based on defendant's recruitment of co-workers to perform work on behalf of a competing company); *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495 (2013) (holding that CUTSA did not supersede breach of fiduciary duty claims based on defendant's solicitation of plaintiff's customers).

The FAC includes allegations regarding improper recruitment of Axia employees and diversion of Axia employees that stand alone from its claims regarding misappropriation of confidential information. For example, Axia alleges that MasonMac induced Lewis, Axia's President of Sales, who had fiduciary and contractual obligations to Axia, to begin recruiting Axia employees while he was still at Axia, and that many of them actually joined MasonMac. FAC ¶ 4. Axia further alleges that MasonMac induced Bartolomucci and other employees to divert Axia clients toward MasonMac while still employed at Axia. FAC ¶ 51. Lewis's alleged recruitment of employees away from Axia and Bartolomucci's diversion of clients away from Axia would be wrongful regardless of whether they disclosed any confidential information.

In fact, MasonMac appears to have admitted that these claims do not depend on confidential information in its reply brief in support of its Motion to Dismiss, when it stated: "The only allegations in the FAC unrelated to confidential information consist of Defendant's lawful recruiting and hiring activities . . . ." ECF No. 104 ("Reply"), at 10. Despite this admission, MasonMac attempts to argue that all of Axia's claims depend on the disclosure of confidential information. The case law cited by MasonMac, however, is neither analogous nor persuasive. For example, MasonMac cites *Beluca Ventures LLC v. Einride Aktiebolag,* where the court held that CUTSA superseded a plaintiff's fiduciary duty claims because the plaintiff's sole allegation was

8

that defendant's disclosure of confidential information constituted a breach of fiduciary duty. 660 F. Supp. 3d 898, 914 (N.D. Cal. 2023). Here, in addition to claims regarding disclosure of confidential information, Axia alleges facts supporting improper recruitment and improper diversion of customers. Further, just because one factual basis for supporting Axia's claims is superseded does not necessitate that all other bases be superseded. *See Mattel,* 782 F. Supp. 2d at 994 (finding that a party's tortious interference claim is superseded "to the extent it is based on" theft of proprietary information, but is not superseded to the extent it is based on unrelated conduct, such as an employee soliciting other employees to perform work for a competitor"); *see also Gallagher & Co. v. Tarantino*, No. 20-cv-05505, 2022 WL 4092673, at *9 (N.D. Cal. July 27, 2022).

### 3. CUTSA supersedes Axia's Section 502 claims.

Axia largely reiterates its argument that CUTSA cannot supersede section 502 claims. As explained in greater detail in the Jan. 12 Order, the Court recognizes the lack of clarity in the federal courts on this issues, but agrees with the majority of courts that it can supersede section 502. *See Alert Enter., Inc. v. Rana*, No. 22-CV-06646-JSC, 2023 WL 2541353, at *6 (N .D. Cal. Mar. 16, 2023) (quoting *Phonexa Holdings, LLC v. O'Connor*, No. B308548, 2022 WL 3698220, at *28 (Cal. Ct. App. Aug. 26, 2022)).

In response to the Court's prior position, Axia offered a new argument in its FAC: proper statutory construction demands a finding that CUTSA cannot supersede section 502. Axia claims that if CUTSA and section 502 have an irreconcilable conflict based on the preemption, "the canons of construction provide that a subsequent enactment controls over a prior one, and a specific enactment controls over a general one." Oppo., at 21 (citing *Lopez v. Sony Elec., Inc.* 5 Cal. 5th 627, 633–34 (2018)). Axia's argument is unpersuasive. First, the relevant portions of section 502 were not enacted more recently than CUTSA. CUTSA and section 502's civil remedy were both enacted in 1984. Secondly, as enacted that year, section 502 applied the civil remedy to "any person who maliciously accesse[d] any computer system," Cal. Civ. Code § 502 (1984), which likely encompass the bases for Axia's claims. *See* FAC ¶¶ 77–79. Consequently, the relevant portions of section 502 are not more recent than CUTSA.

1    Finally, Axia provided only conclusory allegations that the section 502 is more specific

2    than CUTSA, providing excerpts of section 502 without any comparative analysis of the relative

3    breadth of CUTSA. Thus, CUTSA supersedes Axia's section 502 claims.

### B.    Axia sufficiently plead tortious interference with contract.

Axia alleges that MasonMac tortiously interfered with employment agreements between

Axia and its former employees. "To state a viable claim for tortious interference with existing

contracts, a plaintiff must plead: (1) a valid contract between plaintiff and a third party; (2)

defendant's knowledge of this contract; (3) defendant's intentional acts to induce a breach of the

contractual relationship; (4) actual breach of the contractual relationship; and (5) resulting

damage." *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1364

(N.D. Cal. 2013) (citing *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589–90

(1990)).

MasonMac asserts that Axia did not sufficiently plead that MasonMac intentionally acted

to induce a breach; nor did Axia allege, as such, the resulting damage.[3]

#### 1.    Intentional Act

"[T]o maintain a cause of action for intentional inducement of contractual relations,

plaintiff must plead that defendants engaged in an independently wrongful act." *Albert's*

*Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 478 (N.D. Cal. 2020) (citing *Ixchel Pharma, LLC*

*v. Biogen, Inc.*, 930 F.3d 1031, 1037 (9th Cir. 2019)); *see also Reeves v. Hanlon*, 95 P.3d 513,

519–20 (2004).  Courts determine whether an action is "wrongful" by considering if "the conduct

is within the realm of fair competition." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1193

(9th Cir. 2022).

Axia partially bases its tortious interference claim on MasonMac's inducement of Axia

employees to divert Axia's clients toward MasonMac. Courts have found that an employee's

diversion or solicitation of an employer's customers is an intentionally wrongful act.  *Angelica*

*Textile Servs.*, 220 Cal. App. 4th at 510 (2013) (holding that an employee who sought to leave his

---

[3] Based on its briefing, MasonMac does not contest the existence of valid contracts, its knowledge of the contracts, or that the contracts were breached.

United States District Court
Northern District of California

job and create a business competing against his employer wrongfully interfered with his employer's contracts when negotiating terms that allowed customers to terminate their agreement with the employer earlier than industry standard); *Henry Schein*, 2017 WL 783617, at \*4 (holding that defendant met the pleading standard for wrongful interference when soliciting his employer's customers while still employed). Though the parties did not identify any case law addressing this in the context of inducement, it stands to reason that if employee diversion of customers is wrongful, then inducement of employee diversion of customers is wrongful.

Axia also bases its tortious interference claim on MasonMac's inducement of Axia employees to recruit other Axia employees for MasonMac. "[A] defendant is not subject to liability for intentional interference if the interference consists merely of a job offer that induces an employee to terminate his or her at-will employment." *Reeves*, 95 P.3d at 519–20. Courts, however, have found that an employee's recruitment of other employees can constitute a breach of fiduciary duty. *Gallagher*, 2022 WL 4092673, at \*9. Though the parties did not identify any case law addressing this issue in the context of a tortious interference claim, it stands to reason that this would apply to Axia's claims. Axia employees have fiduciary-like obligations in their contract that prohibit them from providing services to Axia's competitors. *See* FAC ¶ 29 ("Employee agrees that he/she shall not perform services for any competitor of Axia or for other person or entity in the mortgage lending and/or real estate industries.") MasonMac is a competitor, and thus inducing Axia employees to perform recruitment on behalf of MasonMac would likely constitute a breach of their employee contracts. Regardless, the diversion of customers allegation is likely sufficient to allow this claim to survive dismissal.

### 2.    Resulting Damage

Axia alleges that MasonMac's actions harmed "its relationship with its valued customers and employees, the loss of its competitive position, loss of market share, loss of employees, and lost profits." FAC ¶ 53. A complaint does not require "detailed factual allegations," but a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v.* Iqbal, 556 U.S. 662, 678 (2009). MasonMac argues that Axia failed to allege harm with "sufficient specificity," Motion, at 21, but the FAC states that "MasonMac induced at least

52 Axia employees to breach their contracts or other obligations," and identifies specific people who left as a result of these breaches. *See, e.g.* ¶ 38 (alleging that while employed at Axia, Lewis recruit Gotsch to begin recruiting other Axia employees away from Axia, and that Gotsch eventually joined MasonMac).

### C.   Axia sufficiently plead tortious interference with prospective economic advantage for existing clients, but not prospective clients.

Tortious interference with prospective economic advantage requires "(1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship"—or, for negligence cases, a defendant's failure to act with reasonable care—"(4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (quoting *Youst v. Longo*, 729 P.2d 728, 733 n.6 (1987)); *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1005 (2018) (citations omitted). In the pleadings, a plaintiff must allege the existence of "a specific prospective relationship, not [potential relationships] with a class of unknown investors or purchasers." *Westside Ctr. Assoc v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–22 (1996); *AccuImage Diagnostics Corp v. Terarecon*, Inc., 260 F. Supp. 2d 941 (2003) ("An existing relationship is required.").

Here, Axia alleged that MasonMac interfered with its relationship with "current and prospective borrowers." FAC ¶ 3. For prospective borrowers, Axia did not identify or describe any existing relationships, and only relied on the conclusory statement that MasonMac "disrupted" its relationship with "prospective buyers." This essentially equates to the "class of unknown investors or purchasers" described in *Westside Ctr.*, and is not sufficient to state a claim for interference with prospective clients.

Axia, however, provided additional detail in support of its claims surrounding existing customers. Axia alleged that the mortgage broker business model revolves around "mak[ing] money by servicing the same borrowers repeatedly," and alleged that MasonMac interfered with

12

these relationship when diverting its existing customers away and preventing Axia from securing repeat business from these existing customers. FAC ¶ 63. MasonMac argues that Axia did not provide sufficient detail regarding these relationships as it did not "specify any customers lost, any particular disruption, nor any of Axia's relationships third parties." Motion, at 20. Though Axia did not specifically name any of its customers, its identification of this concrete group and explanation of the role of repeat customers in the mortgage industry meets the "specific prospective relationship" threshold. Further, MasonMac did not provide any authority that would require Axia to specifically name each of its lost customers in its complaint, and the cases it did cite are not analogous. For example, MasonMac cites to *AccuImage Diagnostics Corp v. Terarecon*, Inc., in which the court dismissed an intentional interference with prospective advantage claim because plaintiff "made conclusory allegations that economic relationships between plaintiff and another exist that contain probable future economic benefit . . . ." 260 F.Supp.2d at 956 – 57. MasonMac also cites to *West Center Associates v. Safeway Stores 23 Inc*, where the court held that the plaintiff had insufficiently plead its claim because it had asserted that defendant interfered with a "class of all potential buyers . . . ." at 42 Cal.App.4th at *523. Unlike the plaintiffs in these cases, Axia concretely identifies a group of customer relationships that were disrupted, and how the disruption occurred (*i.e.*, diversion of customers prevents repeat customers).

    **D.**    **Axia sufficiently plead that MasonMac aided and abetted breaches of fiduciary duty.**

Axia alleges that MasonMac aided and abetted Axia employees in committing a breach of their fiduciary duty. [4]

---

[4] Axia's complaint identified six potential predicates for its aiding and abetting claim. FAC ¶ 56 (alleging that MasonMac knew that Axia employees were engaging in breach of contract, breaches of fiduciary duty and loyalty, unfair competition, tortious interference with contract and business expectancy, and violation of section 502). During the April 23 hearing, counsel for Axia indicated that Axia only intended to assert breach of fiduciary duty as a predicate claim. Thus, the Court will only address the merits of this claim. The Court notes, however, hold that an "aiding and abetting" allegation must accompany an intentional tort allegation. *WhiteCryption Corp. v. Arzan Techs.*, Inc., 2015 WL 3799585, at *4 ("I am aware of [no authority], recognizing a cause of action for aiding and abetting a breach of contract under California law."). Thus, Axia likely could not assert

United States District Court
Northern District of California

### 1.    Merits of Breach of Fiduciary Duty Predicate Claim

Axia has sufficiently plead that some of its employees breached their fiduciary duty. A company's fiduciaries are not limited solely to those individuals who exercise "top-level control;" rather, "an officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law." *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409 (2000); *Angelica*, 220 Cal. App. 4th at 509 (finding that plaintiff sufficiently plead that defendant had a fiduciary duty to plaintiff while employed as a market Vice President who was "responsible for the operations of [plaintiff's laundry plants]" and negotiating contracts with plaintiff's customers). Further, an employee breaches his fiduciary duty when he competes with his employer on behalf of a competitor. *Gallagher & Co. v. Tarantino*, No. 20-cv-05505, 2022 WL 4092673, at *9 (N.D. Cal. July 27, 2022). Here, Axia plead that certain Axia employees had a fiduciary duty to Axia, by identifying their title and the responsibilities for people with that title, and describing their involvement in diverting customers and employees away from Axia to MasonMac. *See* FAC ¶ 20 (president of sales who "oversaw entire sales operation); FAC ¶¶ 19, 38 (area managers who supervise branch managers, manage sales and operations of assigned branches such as recruitment and training); FAC ¶¶ 18, 38 (branch manager who oversaw building and branch operations, including recruiting, supervision of loan originators and operator staff.)

### 2.    Elements of Aiding and Abetting

"In California, a claim for aiding and abetting a tort requires two things: knowledge of the underlying tort, and substantial assistance in its commission." *Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp. 2d 1081, 1083 (N.D. Cal. 2005) (citing *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 846 (N.D. Cal. 2005). Axia alleged that MasonMac had knowledge of, and substantially assisted, Axia employees' conduct based on its allegations that MasonMac employees communicated directly with Axia managers, such as Bartolomucci, to divert Axia's clients to MasonMac and recruit other Axia employees to Mason Mac. Further, Axia

---

claims for aiding and abetting a breach of contract.

1    alleged that MasonMac was aware of the contractual and fiduciary obligations of these employees,

2    asserting that both were standard in the industry, and MasonMac included these obligations in its

3    own contracts.

4         **E.      Axia Sufficiently Plead UCL Violations.**

5         The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." *Agarwal*

6    *v. Pomona Valley*, *Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 674 (9th

7    Cir. 2007) *(*citing Cal. Bus. & Prof. Code § 17200). Under the "unlawful" prong, the UCL makes

8    "violations of other law . . . actionable under the UCL." On the flip side, UCL claims will "stand

9    or fall depending on the fate of the antecedent substantive causes of action." *Krantz v. BT Visual*

10   *Images, L.L.C.,* 89 Cal. App. 4th 164, 178 (2001). For example, sufficient allegations of tortious

11   interference with contract or business relations can form the basis for an unfair competition claim,

12   *See Angelica Textile Servs. v.* Park, 220 Cal. App. 4th 495, 510 (2013) ("interference with

13   competitors employment contracts may constitute unlawful business practice sufficient to support

14   UCL claim") (citing *CRST Van Expedited, Inc. v. Werner Ents., Inc.*, 479 F.3d 1099, 1107 (9th

15   Cir. 2007). Axia's UCL claims are based, in part, on its tortious interference claims, and thus

16   survive dismissal.

17        **F.      Business and Professions Code Section 16600 Does Not Bar Axia's Claims.**

18        MasonMac reiterated its argument that all of Axia's' claims "seek to impose an illegal

19   restraint on competition and employee mobility." Motion, at 25. "[I]n California, 'every contract

20   by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind

21   is to that extent void.'" *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai)*

22   *Co.*, 630 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009) (quoting Cal. Bus. & Prof. Code § 16600). Yet,

23   whether or not Axia's contracts are void, "a court may enjoin tortious conduct as violative of

24   either the Uniform Trade Secrets Act and/or the Unfair Competition Law." *Genasys Inc. v. Vector*

25   *Acoustics*, LLC, 638 F. Supp. 3d 1135, 1149 n.8 (S.D. Cal. 2022) (quoting *Ret. Grp. v. Galante*,

26   176 Cal. App. 4th 1226, 1238 (2009) (cleaned up)). "[T]he conduct is enjoinable not because it

27   falls within a judicially-created 'exception' to section 16600[] . . . , but is instead enjoinable

28   because it is wrongfully independent of any contractual undertaking." *Id.* (quoting *Galante*, 176

United States District Court
Northern District of California

15

Cal. App. 4th at 1238); *see also Applied Materials*, 630 F. Supp. 2d at 1090 n.7 (collecting cases).

Section 16600 "does not affect limitations on an employee's conduct or duties *while employed*." *Becton, Dickinson and Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933, 2018 WL11434596, at *6 fn. 10 (Aug. 16, 2018) (citing *Angelica*, 220 Cal. App. 4th at 509); *see Artec Grp., Inc. v. Klimov*, No. 15-cv-03449, 2016 WL 8223346 at *3 (N.D. Cal. Dec. 22, 2016) (holding that Section 16600 did not void a contract "for the time *before* termination") (italics in original). As Axia's claims revolve around employee conduct during employment at Axia, Section 16600 does not preclude Axia's claims.

## VI.    CONCLUSION

Claim 5 (violation of Section 502) is dismissed with prejudice.

Claim 1 (tortious interference with contract), Claim 2 (aiding and abetting), Claim 3 (intentional interference with prospective advantage), Claim 4 (negligent interference with prospective advantage), and Claim 6 (unfair competition) are maintained, except to the extent they rely on disclosure of confidential information. To the extent these claims rely on such disclosure, they are dismissed with prejudice.

This order resolves ECF 95.

**IT IS SO ORDERED.**

Dated: May 22, 2024

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California